369 A.2d 320

**COMMONWEALTH of Pennsylvania**

v.

**Gerald R. LEONHARD, Appellant.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided Nov. 22, 1976.

William F. Ochs, Jr., Public Defender, Reading, for appellant.

Charles M. Guthrie, Jr., Assistant District Attorney, Reading, for appellee.

118

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant was convicted by a jury of disorderly conduct [1] and failure of a disorderly person to disperse upon official order.[2] Following the denial of a new trial and an arrest of judgment, this appeal was taken challenging the sufficiency of the evidence.

During the evening of December 22, 1974, the officials of the Berks County Prison distributed Christmas packages to the prison inmates. The packages contained bottles of mouthwash with an alcoholic content of 17%. After consuming the mouthwash, a group of inmates became boisterous, overturning tables and benches, and scattering empty mouthwash bottles and other debris around the prison. Deputy Warden High testified that the men were "shuffling around", that some inmates were hitting each other, and that the inmates refused to return to their cells. Prison officials called the state police to the prison and recalled off-duty guards to aid in returning the prisoners to their cells.

On December 23, 1974, appellant, an inmate, was charged in a criminal complaint with riot, disorderly conduct, and failure to disperse. On March 13, and 14, 1975, appellant was tried in the Court of Common Pleas of Berks County. The jury acquitted him of the charge of riot but convicted him of disorderly conduct and failure to disperse. Appellant moved for a new trial and arrest of judgment. After argument, the lower court denied both motions. Appellant argues that the evidence produced at trial was insufficient to sustain his conviction.

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 5503.
2. The Crimes Code, supra; 18 Pa.C.S. § 5502.

In reviewing the sufficiency of the evidence, we must examine the evidence in a light most favorable to the verdict winner, together with all reasonable inferences flowing therefrom. *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1971). It is clear that evidence to convict an accused of a crime must be based on facts and conditions proved; mere conjecture or surmise is insufficient. *Commonwealth v. Bailey*, 448 Pa. 224, 292 A.2d 345 (1972). Further, mere presence at the scene of a crime without affirmative evidence of participation is insufficient to convict. *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966).

Because appellant was convicted of disorderly conduct and failure to disperse, we must consider the elements of each offense separately. To prove an accused guilty of disorderly conduct under § 5503 of the Crimes Code the Commonwealth must establish that the person, acting "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; (4) or creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

It is undisputed that a disturbance occurred in the prison on December 22, 1974. The only issue is whether the accused was an active participant in that event. The Commonwealth produced four witnesses at trial. Two of them arrived at the prison after the disturbance had occurred and therefore could not identify appellant as having performed any act which constitutes one of the elements of disorderly conduct. The third witness, Assistant Warden Santoro stated that appellant was not with the group of men who were boisterous and did not see appellant engage in other conduct which would constitute disorderly conduct under § 5503.

The fourth witness, Deputy Warden High, was present in the prison throughout the disturbance. On direct examination he testified as follows:

"Q. [by the district attorney] Warden High, tell me what occurred on that day that was out of the ordinary?

"A. At approximately 7 p. m. or 6:30 to 7 p. m., the men got very boisterous and loud and started shuffling around, even some inmates hitting each other and things like that. Different scuffles, and they were—it appeared in a drunken mood.

"THE COURT: Drunken mood?

"THE WITNESS: Yes, I would say.

"Q. [by the district attorney] Warden High, did you see the defendant personally on that occasion?

"A. Yes I did.

"Q. What area was he located when you saw him, sir?

"A. At one time I saw him up in the A block area milling around before while we had—before we got the police and things like that. He was in with the other group of men that were causing the disturbance. . . .

"Q. Warden High, on these hours of about 7 to 9:30 that evening on the 22nd of December, did you see anything out of the ordinary as far as the physical appearance of the prison?

"A. Well, it was all upset from them refusing to go in and things like that. It was, windows broken, there was benches upset, tables upset.

"Q. When you say 'they', who do you mean? I think you said about ten prisoners?

"A. Yeah, the general group.

"Q. And was this defendant one of those ten prisoners?

"A. Earlier before I had told him, he was in the A block area with this group."

On cross-examination Deputy Warden High testified to the following:

"Q. [by the public defender] Did you actually see anyone or did you pick anyone out who was becoming boisterous? Did you see someone or did you hear someone shout or was everyone shouting?

"A. Well, there was a few of them. Some were shouting at me and everything else.

"Q. Were there any fights between the inmates?

"A. Yeah, different places, yes.

"Q. Did you see the defendant fighting with anyone?

"A. No, sir. . . .

"Q. Did you see him [meaning the appellant] upsetting any of the tables or breaking any windows or doing anything to destroy the prison property?

"A. No, I didn't see him do that."

Thus, Deputy Warden High did not specifically identify the appellant as having engaged in fighting, making unreasonable noise, using obscene language or creating a hazardous or physically offensive condition. The evidence shows that appellant was milling around in the common area of the prison and that he may have been slightly intoxicated. There is no evidence that appellant personally committed any act of disorderly conduct; the Commonwealth only proved his presence on the scene. See *Commonwealth v. Garrett,* supra. The evidence is, therefore, insufficient to convict appellant on this charge.

In the crime of failure to disperse, the Commonwealth must prove that "three or more persons are engaging in a course of disorderly conduct which causes substantial harm or serious inconvenience. A peace officer or other public servant engaged in executing or enforcing the law may order the participants *and others in the immediate vicinity* to disperse and a refusal to obey

such order is a violation of § 5502." Thus a person may unlawfully refuse to disperse even if he is merely present during a disturbance.

In the instant case all four Commonwealth witnesses testified that appellant refused to return to his cell upon request. Deputy Warden High testified on direct examination as follows:

"Q. Tell me what you said to him. [meaning the defendant]

"A. When I saw him in the TV room, I said, 'You will have to go in and lock in.' Everybody was locking in because we had been given an order for all people to lock in prior to that.

"Q. For the benefit of the jury, what do you mean by lock in?

"A. They have to go into their cell and be locked in.

"Q. Their own individual cells?

"A. Yes, individual cells.

"Q. Did the defendant go into his cell and lock in?

"A. No, refused me.

"Q. What words did he say, if you recall?

"A. He said, 'I won't lock in.' "

Ultimately, state policeman Seese escorted appellant to his cell on the evening in question. Appellant clearly refused to return to his cell upon official order. This conduct is a violation of § 5502.

The judgment of sentence on the charge of disorderly conduct is reversed. When the invalidity of a conviction on one count which may have influenced the sentence becomes apparent on appeal, the proper course is to vacate the sentences and to remand for resentencing on the valid counts without consideration of the invalid one. *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972). The sentence is, therefore, vacated and the case remanded for resentencing.

PRICE, J., files a concurring and dissenting opinion in which WATKINS, President Judge, and JACOBS, J., join.

PRICE, Judge, concurring and dissenting:

I would hold that appellant was properly convicted by the jury on both counts. As the majority properly observes, disorderly conduct [1] is that action done "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Focusing solely on that testimony quoted by the majority, there is, to my view, sufficient evidence to sustain appellant's conviction of this crime.

Deputy Warden High, after describing the start of this occurrence in the jail, testified that appellant "was in with the other group of men that were causing the disturbance." Further after describing certain damage within the jail as being the responsibility of a "general group" of prisoners, the warden identified this appellant as being seen after the start of the disturbance "with this group."

The test of the sufficiency of the evidence is whether, accepting as true all the evidence upon which, if believed, the fact-finder could properly have based his verdict, it is sufficient in law to prove the defendant guilty of the crime charged beyond a reasonable doubt. *Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972). It is axiomatic that the evidence is to be reviewed in a light most favorable to the verdict winner (Commonwealth). *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Rankin,* 441 Pa. 401, 272 A.2d 886 (1971). In so doing, we will

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, Section 1; 18 Pa.C.S. Section 5503.

accept as true the Commonwealth's evidence and all reasonable inferences arising therefrom. *Commonwealth v. Portalatin,* 223 Pa.Super. 33, 297 A.2d 144 (1972).

Viewe'd in that light I have no difficulty in holding the evidence sufficient to specifically identify appellant as an actor in the occurrence involved herein. And there can be no doubt that the occurrence involved meets the definition as set forth in the definition of disorderly conduct, and in particular Section 4 above. It is of no importance to this decision that appellant was not specifically identified as having engaged in fighting, making unreasonable noise or using obscene language. Appellant was specifically identified as a member of a group of prisoners that created a hazardous or physically offensive condition, and as such it was properly accepted by the jury. I believe that the evidence not only proved appellant's presence on the scene, it formed a proper basis for a finding that appellant, as a member of the group at the core of the hazardous or physically offensive condition, was an actor in the creation of that condition.

I would affirm the judgment of sentence on both disorderly conduct and failure of a disorderly person to disperse upon official order.

WATKINS, President Judge and JACOBS, J., join in this concurring and dissenting opinion.