385 A.2d 1362

**COMMONWEALTH of Pennsylvania**

v.

**Robert THOMAS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1977.

Decided April 28, 1978.

Thomas John Kalman, Uniontown, with him Kalman & Votilla, Uniontown, for appellant.

Joseph E. Ferens, Jr., Uniontown, with him Conrad B. Capuzzi, District Attorney, Uniontown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that there was insufficient evidence to sustain his conviction of rape[1] and that the lower court erroneously admitted certain alleged hearsay testimony. We disagree with both contentions and, therefore, affirm the judgment of sentence.

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3121.

On February 23, 1976, the complainant filed a private criminal complaint against appellant in which she alleged that appellant had raped her on Thursday, February 19, 1976, at approximately 11:45 p. m. On February 27, 1976, appellant was arrested. At a jury trial in the Fayette County Court of Common Pleas, on June 16–18, 1976, the complainant testified that during the early evening of February 19, 1976, she was at home with her three children, ranging in age from 14 months to 4½ years. Her husband, who worked from 8:00 p. m. to 8:00 a. m., had left the house at about 6:30 p. m. Soon thereafter, the complainant took her children to a local food store where she spent about a half hour shopping. On the way home, she and her children stopped at the home of appellant's parents whose property adjoined that of the complainant and her husband. She testified that she and her husband had known appellant's parents for more than three years, visited them often, and that her children referred to them as grandparents. Appellant was not present when the complainant and her children visited his parents.

The complainant and her children returned home at about 9:30 p. m.[2] Appellant telephoned at approximately 10:00 p. m. According to the complainant, appellant was upset and wanted to speak with someone. In the past, appellant had, on occasion, called while in a depressed mood. The complainant said that her husband always took the calls and sometimes left the house to meet appellant. At first, she refused his suggestion that she leave her house and talk with him in person. Eventually, following twenty minutes of repeated requests, she agreed to meet with him at Firmani's, a local bar. However, she was emphatic that she could talk to him for only a short while because she had work to do at home.

When the complainant drove her station wagon into Firmani's parking lot, appellant came out of the bar and got

---

2. Other persons present at the home of appellant's parents testified for the defense that the complainant and her children departed at approximately 11:00 p. m.

behind the wheel of her car. He told her that he did not want to talk there, but wanted to drive to another bar five miles away in order to get a beer. She acquiesced, but again said that she did not want to be out very late. As they drove to the bar, appellant spoke about his domestic problems and the difficulties he was experiencing with his parents. When they arrived at the bar, appellant went inside while the complainant and her children waited in the car. Appellant returned to the car and told the complainant that he intended to take a different route back to Firmani's where he had left his truck. He evaded the complainant's questions about the circuitous route which appellant selected and her requests that he return to the main road.

Appellant drove the car onto a dirt road, pulled off into a field, turned off the car, and locked the doors. He then pulled out a knife, tore the complainant's clothes, and demanded that she engage in various sex acts with him. Appellant also threatened her children who were crying in the rear of the car. The complainant testified that she feared for her life and for the safety of her three children. As she struggled, appellant raped her and forced her to perform other sex acts. The next thing she remembered was awakening in the passenger seat of her car in the parking lot of Firmani's bar to the screaming of her children. Her keys were in the ignition. Appellant's truck was gone. It was about 3:00 a. m. when she returned to her home. She awoke at 9:00 a. m. when she heard her daughter explaining the events of the night to her husband who had just returned from work.

Before resting its case, the Commonwealth also called Magdalene Zuzak, the mother-in-law of the complainant who testified that on Saturday, February 23, 1976, two days after the incident in question, the complainant, her husband, and their three children visited her at her home. She said that the complainant was upset, looked drawn, and had bruises on her neck, legs, arms, and abdomen.

Appellant testified that he had sexual relations with the complainant once or twice in 1975 and an unspecified num-

ber of times in 1974. On each occasion, he telephoned her and she agreed to meet him. Further, each time they had sexual relations, the complainant's children were present in the automobile. Appellant described the night in question with the complainant as similar to their previous encounters. He telephoned her and she agreed to meet with him. They had sexual relations while the complainant's children sat in the back seat of the car. However, appellant denied the threat or use of force toward the complainant and her children.

On June 18, 1976, the jury returned a verdict of guilty to the charge of rape. The court then informed appellant of his rights and obligations pursuant to Rule 1123(c), Pa.R. Crim.P.; 19 P.S. Appendix. On June 24, 1976, appellant's present counsel entered an appearance. On the following day, he filed timely, boilerplate post-verdict motions. He also assigned as error the lower court's admission of certain alleged hearsay evidence. In his motion, counsel stated that he would supplement the post-verdict motions with "additional reasons as soon as the complete notes are received from the official stenographer."

The docket entries show that on September 16, 1976, the lower court granted counsel's "Motion for Continuance of Argument" in which he petitioned for the postponement of impending argument on appellant's post-verdict motions. In the motion, counsel averred that "I did not represent the defendant at the trial and must depend on a transcript of the evidence in order to prepare a brief." However, the record discloses that the official court stenographer filed the notes of trial testimony in the Fayette County Court of Common Pleas on August 5, 1976. The record also shows that counsel did not file supplemental post-verdict motions.

On May 11, 1977, the court en banc issued the following order: "And now, May 11th, 1977, after consideration, this case having been listed for argument on May 2, 1977, the motion ex parte defendant, Robert Thomas, for a new trial is overruled and dismissed. Defendant will appear for sentence when notified by the District Attorney." On May

26, 1977, the lower court sentenced appellant to pay the costs of prosecution, a fine of $300.00, and imprisonment for not less than five years nor more than fifteen years. This appeal followed.[3]

Appellant contends that the evidence was not sufficient to establish his guilt beyond a reasonable doubt. In determining whether the evidence is sufficient to support the guilty verdict, we accept the Commonwealth's evidence as true, including all reasonable inferences therefrom. *Commonwealth v. Crider*, 240 Pa.Super. 403, 361 A.2d 352 (1976); *Commonwealth v. Coe*, 226 Pa.Super. 594, 323 A.2d 213 (1974). In the instant case, the complainant testified that she agreed to meet with appellant on the evening in question only because he had convinced her that he needed to speak with her about personal problems he was experiencing. She then recounted that appellant drove her car onto an unlit field against her protestations and forced her at

3. In his brief, appellant's counsel asserts six reasons for reversing the judgment of sentence. Two of those reasons were also contained in appellant's post-verdict motions and are, therefore, properly before us. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). The other four contentions are raised for the first time on direct appeal and are, therefore, not properly preserved for our review. *Commonwealth v. Blair*, supra. We are not unmindful of the fact that counsel was severely handicapped in filing post-verdict motions because he did not represent appellant at trial and did not have access to notes of trial testimony at the time he filed post-verdict motions. In fact, we assume that it is because counsel had not yet procured a transcript of the notes of testimony that he petitioned the court for a continuance of the date set for argument of his post-verdict motions. In *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977), counsel also reserved the right to file additional post-verdict motions when the transcribed notes of testimony were made available to him. The Supreme Court noted that "[a]dditional or supplemental assignments of error should be filed expeditiously and sufficiently prior to the date of argument to afford both sides the opportunity to make an adequate presentation of the issues before the post-verdict motions court." *Commonwealth v. Perillo*, supra, fn. 2. In the instant case, counsel did not file supplemental post-verdict motions in the approximately nine months between the filing of the official transcript on August 5, 1976, and the date for argument on the original post-verdict motions on May 2, 1977. As a result, we conclude that appellant has waived all contentions which he raises for the first time in his brief before us. *See also Commonwealth v. Talley*, 456 Pa. 574, 318 A.2d 922 (1974).

knifepoint to engage in sexual relations with him as her young children looked on from the back seat of the automobile. According to the complainant, appellant also threatened her children with bodily harm if she did not accede to his demands. We are satisfied that the foregoing evidence is ample to support the guilty verdict. *Commonwealth v. Crider*, supra.[4]

■ Appellant also claims that the lower court committed reversible error in permitting two alleged hearsay statements of Magdalene Zuzak, mother-in-law of the complainant. In particular, appellant points to the following exchange:

"Q. [by the Assistant District Attorney] Do you know whether your son had talked with Mr. Thomas on occasions about various depressions?

"[Defense Counsel]: That is objected to. There is no basis or foundation laid for that examination, Your Honor.

"THE COURT: Your question was whether he had talked to him about what?

"[Assistant District Attorney]: About the depressed condition, Your Honor, that we have talked about. The victim has said how depressed Mr. Thomas was the evening that he called and I am asking this witness whether or not she knows of the particular depressed state that he had been in on various occasions.

4. Appellant also argues that the verdict is against the weight of the evidence. In *Commonwealth v. Zapata*, 447 Pa. 322, 327, 290 A.2d 114, 117 (1972), the Supreme Court said that "[t]he grant of a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court. (citations omitted). Where the evidence is conflicting, the credibility of the witnesses is solely for the jury and if its finding is supported by the record, the trial court's denial of a motion for a new trial will not be disturbed. (citations omitted)." Having reviewed the evidence, we find no abuse of discretion in the lower court's denial of appellant's motion for a new trial on this ground.

Finally, appellant asserts that the verdict was against the charge of the court. After reviewing the charge as a whole, *Commonwealth v. Peterman*, 430 Pa. 627, 631, 244 A.2d 723 (1968); *Commonwealth v. Coleman*, 235 Pa.Super. 379, 341 A.2d 528 (1975), and the evidence adduced at trial, we find no inconsistency.

"[Defense counsel]: How would she know. She never talked to this fellow.

"THE COURT: Well we will permit her to answer your question yes or no. That would be if she knows.

"[Assistant District Attorney]: That is exactly what I asked Your Honor, if she knows . . .

"Q. Do you know whether or not your son on different occasions would go to talk to Mr. Thomas when Mr. Thomas felt he needed somebody to talk to?

"A. I just only know what my son told me, which he has told me that—

"Q. Well I don't want to know anything your son told you because that is inadmissible.

"A. I mean I haven't been in the presence of them to hear him that, you know, one or the other would call."

From this exchange, it is clear that the witness did not testify as to statements which may have been made by her son or any other third party. In short, because the witness did not utter any hearsay which could have served as the foundation for such an evidentiary objection, we conclude that this claim is meritless.

██ Appellant next refers to the following exchange between the Assistant District Attorney and the complainant's mother-in-law:

"Q. Did you notice anything particular about her body?

"A. Well after she told me what the problem was—

"Q. What was that?

"[Defense counsel]: That is objected to as hearsay.

"A. She told me she was raped by—

"THE COURT: Well we will sustain the objection. You are not able, Mrs. Zuzak, to say what somebody else told you

"Q. Now Mrs. Zuzak, I don't want you to tell me what Terry told you, the Court has ruled that is inadmissible for you to say. All I want you to do is describe to me what her physical condition was like."

While we acknowledge that the witness answered the question with the hearsay statement of her daughter-in-law, we also note that the court did everything it could to prevent the response by interrupting the witness as she uttered the out-of-court statement. Moreover, after the court sustained defense counsel's objection, the Assistant District Attorney did not try to exploit the statement by reference to it in his further examination of that witness or any other witness, including appellant. Further, appellant's trial counsel did not request either a cautionary instruction to the jury or that a mistrial be declared. All of these factors convince us that appellant's contention lacks merit.

Judgment of sentence affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, J., files a concurring opinion.

SPAETH, Judge, concurring:

I agree in all respects with the majority's discussion. I wish to add, however, that appellant in his brief makes quite an alarming allegation: that his trial counsel's son and law partner represented the complainant in an equity suit against appellant's parents during the same time that this criminal case was being tried, and that trial counsel and his son "attempted to use this [criminal] action to settle the equity suit by offering to drop the charges should the parents of the appellant grant another right of way to the property sold to [complainant and her husband]." Appellant's Brief at 14. If this allegation is true, it may be demonstrable that trial counsel could not represent appellant effectively.

Since, as the majority notes, this claim was not raised in post-verdict motions by post-verdict (now appellate) counsel, we may not consider now whether it has any merit. If post-verdict counsel learned the facts now alleged before the lower court decided his post-verdict motions, he should have asked leave to file a supplemental motion. If he learned the

facts after the post-verdict motions were denied, but before sentencing, he should have asked the court to vacate the order denying post-verdict motions and to grant him leave to file a supplemental motion. If he learned the facts after sentencing but before he filed this appeal, he should have filed a petition for reconsideration or for a hearing on after-discovered evidence. If he learned the facts after he filed this appeal, his only recourse was to raise the claim in his brief to us, *telling us when he had learned the facts,* so as to enable us to decide whether we should remand for a hearing.

None of these steps was taken. Therefore, if appellant wishes to pursue the claim that his trial counsel was ineffective because of a conflict of interest, he must do so by a petition under the Post-Conviction Hearing Act, raising first the question of effectiveness of post-verdict/appellate counsel.