419 A.2d 1344

**COMMONWEALTH of Pennsylvania,**

v.

**Dennis M. THOMAS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed May 23, 1980.

---

42

Arthur J. King, Assistant Public Defender, Norristown, for appellant.

John J. Burfete, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before HESTER, HOFFMAN and CATANIA, JJ.*

HESTER, Judge:

Appellant Dennis M. Thomas was convicted with a co–defendant in a jury trial on charges of robbery, theft, receiving stolen property, simple assault, and criminal conspiracy.[1] Post trial motions were argued and denied and an aggregate sentence of two to five years imprisonment was imposed. This appeal followed, in which appellant posits three issues for our determination.

Facts adduced at trial established the following scenario of events. On the evening of December 23, 1977, the complainant Stephen Porter attended an auction in Gilbertsville, Pennsylvania, where he was successful in selling his automobile for the sum of $625.00. Following the auction, he began

---

* President Judge Francis J. Catania, of the Court of Common Pleas of Delaware County, Pennsylvania, is sitting by designation.

1. Crimes Code, 18 Pa.C.S.A. § 3701, 3921, 3925, 2701, 903 respectively.

to search for a ride to his home in Glenside, about 55 miles east of Gilbertsville. He finally decided to hitchhike and was soon picked up on Route 73 by two men, a driver and a passenger in a Volkswagen, heading east. Porter climbed into the back seat and was informed that the two men were going to the "Wine Press", an establishment in nearby Limerick, Pennsylvania. After arriving at the Wine Press, Porter thanked the two men and resumed hitchhiking, but was soon again picked up by the same two men in the Volkswagen who offered to drive Porter to Collegeville. After travelling some distance, the driver turned the car down a dirt road onto State Game land where he parked the car and got out. Porter was ordered out of the car by both men and was hit in the jaw by the driver, whereupon the two men demanded all of Porter's money. As the passenger waved a club at Porter, the victim emptied his pockets onto the ground and fled into the woods, seeking aid at a nearby home. When he returned to the scene later that night with Limerick Township Police Officers, all of his money, about $635.00, was gone, as were the robbers.

A few hours later, Porter was shown an array of photographs at the Limerick police station and identified the appellant herein as the driver of the car. In addition, Porter chose the photograph of one Warren Hart and stated he looked like the passenger. Hart was arrested, but was shown later not to be involved in the incident. Hence, on December 27, 1977, Porter chose from another group of photographs the picture of co–defendant William Kocher. Kocher was then arrested, tried, and convicted along with appellant.

Appellant first asserts that he is entitled to a new trial because the verdicts were against the weight of the evidence. The grant of a new trial on the ground the verdict is against the weight of the evidence is committed to the sound discretion of the trial court. *Commonwealth v. Chapman*, 255 Pa.Super. 265, 386 A.2d 994 (1978); *Commonwealth v. Thomas*, 254 Pa.Super. 326, 385 A.2d 1362 (1978). Instantly, in addition to identification testimony, appellant

44

was also linked to the crime by his Volkswagen. Porter testified that the car in which he rode bore the inscription "Adios, M.F." spray painted on the back. Appellant was arrested in front of his home on December 24, 1977 as he alighted from a Volkswagen bearing these words. Additionally, a registration number recorded by an observant witness during Porter's ordeal matched the registration of the car in appellant's driveway. The fact that appellant offered alibi evidence does not defeat the verdicts. "Where the evidence is conflicting, the credibility of the witness is solely for the jury and if its findings are supported by the record, the trial court's denial of a motion for a new trial will not be disturbed." *Commonwealth v. Zapata*, 447 Pa. 322, 327, 290 A.2d 114, 117 (1972).

Appellant next challenges the admission of Porter's in-court identification of him. At the pre–trial suppression hearing, the court found "by the narrowest of margins", that the photographic displays as to both defendants were unduly suggestive and could not be admitted at trial. The court also ruled that Porter would be permitted to identify both of his assailants in court since the identifications were found to have a basis independent of any pre–trial suggestiveness. The particular defects in the photo array as to appellant were these: Porter's description of the driver of the car was that of a white male, 5'8" or 5'10", missing or bent front teeth, shoulder length light blonde hair. From the seven or eight photos shown to the complainant, it seems only two or three, including appellant's matched this description, thus improperly suggesting appellant as the perpetrator. Nonetheless, the court found that Porter's view of appellant at the time of the crime was sufficient to allow the in–court identification, irrespective of the tainted pretrial identification. Appellant now challenges this finding.

Subsequent to a suggestive out of court confrontation, an in–court identification is admissible if, considering the totality of circumstances, the in–court identification had an independent origin sufficiently distinguishable from the illegal encounter so as to be purged of the primary taint. *U.*

*S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Wong Sun v. U. S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Taylor*, 472 Pa. 1, 370 A.2d 1197 (1977). Such an independent basis need only be established by the Commonwealth by clear and convincing evidence. *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976); *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976); *Commonwealth v. Diggs*, 260 Pa.Super. 349, 394 A.2d 586 (1978). In order to determine whether an independent basis exists, we rely on the following criteria:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Fowler, Taylor*, supra.

■ On the evening of the robbery, Porter first observed appellant as the latter stopped the Volkswagen under a utility lamp along Route 73. The victim looked into the car from the passenger side and engaged in a one minute conversation with the occupants, all the while viewing their faces at close range. During the ride to the Wine Press, about fifteen minutes elapsed during which appellant occasionally turned to speak with Porter. When they arrived at the Wine Press, Porter again observed appellant by the light of the parking lot as he thanked is soon–to–be assailant for the lift. Minutes later, appellant and Kocher offered the complainant a further ride to Collegeville during which Porter again spoke with and observed appellant at close range. When the car pulled into the woods and the occupants exited. Porter observed appellant in the shine of the headlights. Altogether, Porter was in the company of ap-

pellant approximately one–half hour that evening convers-
ing with him and viewing him at distances of no more than a
few feet. The only variation between Porter's description of
the driver and appellant's physical characteristics was appar-
ently that appellant sported a moustache while Porter ne-
glected to mention same. At the photographic identifica-
tion, conducted merely three hours after the incident, Porter
expressed "no doubt" that the photo of appellant was indeed
the driver. N.T. 6/2/78, p. 85. In view of such certainty,
and the ample opportunity to observe the driver on the
evening of the crime,[2] the corrupting influence of the photo
array was minimal, particularly where we deal with a victim
who is "articulate . . . intelligent and [whose] perceptions
are considerably keener than most" N.T. 6/5/78, pp. 138–9.
We are thus satisfied that this identification was, on the
whole, "reliable," *Manson,* supra; *Commonwealth v. Steffy,*
264 Pa.Super. 110, 399 A.2d 690 (1979), and that the in–court
identification was properly admitted. See also, *Common-
wealth v. Farrel,* 265 Pa.Super. 41, 401 A.2d 790 (1979).

Appellant lastly contends that his conspiracy conviction is
invalid because the Commonwealth was improperly permit-
ted to amend the complaint at the preliminary hearing. The
complaint filed against appellant alleged that he "did con-
spire with one Warren Hart to commit" the crimes of
robbery, theft, RSP, and assault. As we have already noted,
Hart was subsequently shown not to be appellant's accom-
plice and co–defendant William Kocher was arrested and
charged as a co–conspirator. At appellant's preliminary
hearing on January 13, 1978, the Commonwealth, over de-
fense objection,[3] amended the complaint, substituting "Wil-

2. The opportunity of the witness to observe the defendant at the time
of the crime is considered to be the most important of the *Manson–
Biggers* factors. *Commonwealth v. Smith,* 262 Pa.Super. 258, 396
A.2d 744 (1978).

3. No transcript of the preliminary hearing is included in the record
before us and hence it is impossible to determine whether in fact
counsel objected in order to preserve the claim. When counsel filed
his motion to quash the magistrate's transcript, he averred that he
did object to the amendment, while the Commonwealth in its answer
denied that he objected and demanded strict proof. No transcript of

liam Kocher" for "Warren Hart" in the conspiracy charge. Appellant now contends, and we are constrained to agree, that the defect was "substantive" and that the amendment was improper under Pa.R.Crim.P. 150.

Rule 150 provides:

Defects in Complaint, Citation, Summons or Warrant

(a) Informal Defects:

No person arrested under a warrant or appearing in response to a summons or citation shall be discharged from custody nor shall any case be dismissed because of any informal defects in the complaint, citation, summons, or warrant, but the complaint, citation, summons or warrant, may be amended at any time so as to remedy any such informality.

(b) Substantive Defects:

If a complaint, citation, summons or warrant contains a substantive defect, the defendant shall be discharged unless he waives the defect. Nothing in this rule shall prevent the filing of a new complaint or citation and the issuance of process in which the defect is corrected in a proper manner.

It is, thus, clear that the omission of an offense from a complaint constitutes a "substantive defect" which cannot be remedied by merely amending the complaint. *Commonwealth ex rel. Fitzpatrick v. Mirarchi*, 481 Pa. 385, 392 A.2d 1346 (1978); cf. *Commonwealth v. Herstine*, 264 Pa.Super. 414, 399 A.2d 1118 (1979); *Commonwealth v. Jonnet*, 265 Pa.Super. 315, 401 A.2d 1228 (1979); see also, *Commonwealth v. Brocklehurst*, 266 Pa.Super. 335, 404 A.2d 1317 (1979). The purpose behind the prohibition against substan-

the pre–trial hearing on this motion is before us and thus we are again unable to determine how this factual dispute was resolved. The post verdict court, moreover, declined to discuss this issue in any respect in its opinion, even though appellant included the claim in post trial motions. In briefs before this Court, appellant again alleges that his counsel properly preserved the claim by objecting at the preliminary hearing. The Commonwealth does not now dispute this averment and hence we will assume that the proper objection was made.

tive changes is to "assure that the defendant receives proper notice of the charges filed against him and to allow him time to properly prepare his case." *Commonwealth v. Jones*, 50 Pa.Super. 471, 481, 378 A.2d 1245, 1249 (1977); *Commonwealth v. King*, 227 Pa.Super. 168, 323 A.2d 260 (1974). When an amendment is sought to be made, the court should inquire whether the crime specified in the original complaint involves the same basic elements and evolved out of the same factual situation as the one specified in the amended complaint. If this is so:

> then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, for the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Commonwealth v. Stanley*, 265 Pa.Super. 194, 212–213, 401 A.2d 1166, 1175 (1979) (footnotes omitted).

■ We think it clear that an outright substitution of a named co–conspirator in a complaint constitutes "a different set of events" and could require "materially different defenses" of the accused. A charge of conspiring with one Hart to commit certain offenses must necessarily embrace a unique factual setting which is radically altered when the Commonwealth seeks to charge that appellant conspired with Kocher, and not Hart. Further, a proposed defense to a conspiracy charge may be rendered useless and a new defense strategy may be called for depending upon whom the defendant is alleged to have conspired with. This is thus not a case wherein the complaint alleges a conspiracy, but avers that the identities of one or more co–conspirators are unknown, 16 Am.Jur.2d, Conspiracy, § 28, or where the identity of the co–conspirator is omitted or left blank, yet the accused is fully aware of who his co–conspirator is, *Commonwealth v. Brown*, 229 Pa.Super. 67, 323 A.2d 845 (1974). Indeed, the Supreme Court over 100 years ago drew

a marked distinction between the latter cases and the issue at hand. In *Rough v. Commonwealth*, 78 Pa. 495 (1875), where the defendant was accused of selling liquor without a license, the name of his buyer was inserted on the space theretofore left blank in the indictment. The court did not find this to be a material change and stated, "We are of the opinion the amendment was proper. Had another name been in the indictment, and evidence offered exhibiting a variance, the case would have fallen within the letter of the Act.[4] It seems to us a blank is not so great a variance as the averment of a wrong name. The former merely conveys no information; *but the latter actually misleads.*" 78 Pa. at 496, (emphasis added); see Anno. 14 A.L.R.3d 1358. When a defendant can be misled by the complaint, then he does not have fair notice of the charges pending and the complaint is substantively defective. Further, if the complaint charges the defendant conspired with the wrong person, then it seems clear the "the offense is not properly described." Comment, Rule 150. The potential for prejudice in such a mid–stream substitution is apparent. We thus conclude that the defect here was substantive and should not have been amended in the face of a defense objection. Appellant is entitled to be discharged on this count.

■ There remains the question whether we should re- mand for resentencing. In *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972), we said, "When the invalidity of the conviction on one count which may have influenced the sentence becomes apparent . . ., the proper course is usually to vacate the sentences and remand for resentencing on the valid counts without consideration of the invalid one." id., 223 Pa.Super. at 65, 296 A.2d at 886. See also, *Commonwealth v. Starkes*, 268 Pa.Super. 108, 407 A.2d 853 (1979); *Commonwealth v. Rios*, 246 Pa.Super. 479, 371 A.2d 937 (1977); *Commonwealth v. Leonhard*, 245 Pa.Su- per. 116, 369 A.2d 320 (1976). We have also held, however,

---

4. Act of March 31, 1860, P.L. 427, § 13 (19 P.S. § 433) repealed by § 2(a) [377] of Act 1978, April 28, P.L. 202, No. 53, permitting amendments to indictments which are "not material to the merits of the case."

that the invalidity of some portions of the judgment of sentence does not always require a remand for resentencing, as where the sentence on the invalid count was de minimis, *Commonwealth v. Moore*, 261 Pa.Super. 92, 395 A.2d 1328 (1978), where the sentence had been suspended on the invalid count, *Commonwealth v. Davenport*, 255 Pa.Super. 131, 386 A.2d 543 (1978), or where it is otherwise obvious that the same sentence would be imposed on remand, *Commonwealth v. Crowson*, 267 Pa.Super. 46, 405 A.2d 1295 (1979); *Commonwealth v. Grant*, 235 Pa.Super. 357, 341 A.2d 511 (1975). In short, a remand is not necessary whenever it is apparent from the record that such would be "a mere procedural exercise." *Grant*, supra, i. e., no change in the sentence would result. See also, *Commonwealth v. Senyszyn*, 266 Pa.Super. 480, 405 A.2d 535 (1979); *Commonwealth v. Guenzer*, 255 Pa.Super. 587, fn. 2, 389 A.2d 133, fn. 2 (1978).

 We think this is such a case. On the convictions for robbery and conspiracy, the court imposed concurrent sentences of two to five years imprisonment. On the remaining charges, sentence was suspended. Our review of appellant's sentencing hearing reveals a short juvenile criminal record and a more lengthy adult record involving marijuana possession and a string of burglaries in Berks County. The court specifically found that appellant's past record, coupled with the present convictions, compels the conclusion that a term of incarceration is warranted to reduce the risk that he would commit another offense. We are persuaded that a remand instantly would only result in the same sentence. cf. *Grant*, supra.

Judgment of sentence for conspiracy is reversed and appellant is discharged on that count. Judgments of sentence for robbery, theft, RSP, and simple assault are affirmed.

HOFFMAN, J., files a concurring and dissenting opinion.

HOFFMAN, Judge, concurring and dissenting:

Although I agree that we must reverse the judgment of sentence on the charge of conspiracy, I dissent from that

portion of the majority's opinion affirming the judgments of sentence on appellant's remaining convictions. The proper procedure in a case such as this, in which an invalid conviction on one count may have influenced the sentence on another conviction, is to remand for resentencing on the valid conviction. *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972). *See also Commonwealth v. Stufflet*, 276 Pa.Super. 120, 419 A.2d 124 (1980); *Commonwealth v. Starkes*, 268 Pa.Super. 108, 407 A.2d 853 (1979); *Commonwealth v. Rios*, 246 Pa.Super. 479, 371 A.2d 937 (1977). Although we need not remand for resentencing where an invalid conviction clearly could not have influenced the lower court's sentences on the remaining convictions. *Commonwealth v. Crowson*, 267 Pa.Super. 46, 405 A.2d 1295 (1979); *Commonwealth v. Senyszyn*, 266 Pa.Super. 480, 405 A.2d 535 (1979); *Commonwealth v. Moore*, 261 Pa.Super. 92, 395 A.2d 1328 (1978), this is not such a case. The majority's conclusion that a remand "would only result in the same sentence," at 1350, is a form of judicial speculation in which we should not engage. Accordingly, I would reverse the judgment of sentence for conspiracy, vacate the sentences on the remaining convictions, and remand for resentencing on the valid convictions.