**UNITED STATES of America**

v.

**Lexie Little CARTER.**

**Cr. No. 83–167.**

United States District Court, W.D. Pennsylvania.

March 28, 1984.

On Supplemental Motion to Suppress April 16, 1984.

Sandra D. Jordan, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Thomas S. White, Asst. Federal Public Defender, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

The defendant, Lexie Little Carter, was indicted on October 25, 1983 for five counts of bank robbery under 18 U.S.C. § 2113(a). A plea of not guilty to said charges was entered on November 4, 1983 before United States Magistrate Ila Jeanne Sensenich. On December 6, 1983, the defendant changed his plea to guilty of all the charges before this member of the court. Subsequent thereto, Carter forwarded letters to the court requesting permission to withdraw his plea of guilty. These letters were ordered to be filed as a motion to withdraw guilty plea and a hearing on said motion was held on December 19, 1983. Subsequent to said hearing, an order was entered permitting the defendant to withdraw his guilty plea and enter a plea of not guilty.

Thereafter, the defense filed a motion to suppress statements, motion to suppress identification testimony, motion to suppress evidence seized from an automobile, and a motion to sever counts. Hearings were held on said motions on January 4, 5, and 6, 1984. At the conclusion of said hearings, the court ordered findings of fact and conclusions of law from the parties. The defendant's findings of fact and conclusions of law were filed on February 27, 1984; the government's findings of fact and conclusions of law were filed on March 16, 1984.

After a review of said findings, the defendant's motions, and the transcripts of proceedings, the court will deny the defendant's motions to suppress.

## MOTION TO SUPPRESS STATEMENTS

The defendant, Lexie Little Carter, has filed a motion to suppress statements asserting that certain statements should be suppressed as the fruits of an unlawful arrest citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Defendant further alleges that at the time the statements were made he was under the influence of drugs. As a result, his will was allegedly "easily overborne" (Paragraph four of the motion) and he, therefore, implies that the requisite voluntariness was lacking. Also raised as a factor going to the suppression of statements is defendant's contention that interrogation did not cease when defendant requested an attorney and no attorney was provided. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant further alleges that he was under "considerable emotional and psychological pressure to confess brought to bear on him by the State and Federal officers who questioned him incessantly." Therefore, defendant contends the statements were given as a result of psychological coercion in violation of his due process rights under the Fifth Amendment to the Constitution of the United States.

## The Arrest

We shall begin with a review of the facts and circumstances incident to the defendant's arrest on September 21, 1983.

██ The defendant was arrested pursuant to a valid arrest warrant. The affiant to said warrant, City of Pittsburgh Police Detective Regis Smith, described the basis for said warrant in detail at the hearing (Tr. p. 82). Defendant was identified by Allegheny Detectives James Heyl and Peter Kempton and by City of Pittsburgh Police Detective Smith from a surveillance photograph of a robbery of the Swissvale Branch of Equibank N.A. and had also been identified by Donna Harris,[1] a teller at the Pittsburgh National Bank, on Liberty Avenue which was robbed on September 14, 1983.

On the day of the arrest, September 21, 1983, five Pittsburgh Police Detectives staked-out the defendant's apartment. At approximately 5:15 p.m., defendant drove down Locust Street approaching his apartment. Detective Leonard received a radio transmission from Detective Hynes advising him that defendant was driving on Locust Street. Detective Leonard and his partner, Joseph Figura, proceeded to block the roadway with their car. Detectives Hynes and Smith, also from the City of Pittsburgh, were behind the defendant's car. Carter stopped his car, got out of the car, put his hands on the roof, and was patted down (Tr. p. 29). Detective Hynes read Carter the *Miranda* warnings, secured the arrest, and read the warrant to Carter while sitting in his car (Tr. p. 149).

Detective Hynes proceeded to search the car and found a long barrelled pistol (which turned out to be a pellet gun) sticking out from underneath the driver's seat (Tr. p. 29).

With respect to the above facts and circumstances incident to the arrest warrant, arrest, and seizure of the pellet gun, we find no merit to the defendant's allegations that the arrest was illegal. There is no hint of impropriety in any of the procedures utilized by the police who participated in Carter's arrest.

## The Interrogation and Statements Provided by Defendant

We next review the facts surrounding the defendant's in custody interrogation.

██ After his arrest, Carter was taken to the City of Pittsburgh Public Safety Building, Police Robbery Office. Ronald Bernot, a detective in the Pittsburgh Police Department, read the defendant his rights at approximately 5:45 p.m. on the day of the arrest, September 21, 1983 (Tr. pp. 52–53; Government Exhibit No. 1). The defendant's rights were read to him from a standard Pittsburgh Police Department pre-interrogation warning form. The defendant signed the form (Government Exhibit No. 1), which was witnessed by Detective Bernot (Tr. p. 53). Said form indicates Carter waived his rights and was willing to respond to questions without a lawyer being present. Carter also signed Miranda rights and warning forms read to him by Allegheny County Police (Government Exhibit 3) and by FBI Agent Ralph Young (Government Exhibit 7). He waived his rights on these forms as well. The FBI "Interrogation: Advice of Rights" form was signed at 8:47 p.m. (See Government Exhibit 7).

After reading defendant his rights and obtaining a waiver, Agent Young proceeded to question defendant on five different bank robberies in chronological order (Tr. p. 62). The method used was to show the defendant an FBI dissemination memo identifying the robbery and a bank surveillance photograph (Government Exhibits 9, 10, 11, 12, and 13).[2] After the presentation of each dissemination memo and surveillance photograph, Carter admitted to com-

---

1. Ms. Harris identified the defendant from a surveillance photograph of the robbery of Pittsburgh National Bank on September 14, 1983. See the affidavit to the arrest warrant (Government Exhibit 17).

2. Government Exhibit 13 did not have a surveillance photograph attached.

mitting each robbery and initialed both the dissemination memo and the photograph relating to each particular bank robbery (Tr. pp. 62–65). FBI Agent Young described the atmosphere during interrogation as "cordial and (sic) cooperative" (Tr. p. 65). Detective Heyl of the Allegheny County Police characterized the atmosphere during the interrogation as "friendly" (Tr. p. 26 and p. 172).

Although we recognize that a defendant *could* be intimidated during an interrogation involving three different law enforcement organizations (the City and County Police and the FBI), we specifically find no intimidation or coercion under the facts and circumstances of this case as elicited at the hearings on January 4, 5, and 6, 1984 (Tr. p. 73 and p. 172).

Carter completed his oral statements concerning the bank robberies at approximately 9:08 p.m. (Tr. p. 67), and was then taken for arraignment to the local magistrate in the Public Safety Building (Tr. p. 67). He returned to the interview room around 11:00 p.m. (Tr. p. 67) and was asked if he was willing to give a taped statement. He declined and said he wished to speak to a lawyer and interrogation ceased (Tr. p. 67 and 166).

Considering the above enumerated facts and circumstances (including the fact that Carter was familiar with an advice of rights form having been a County Police Officer),[3] in connection with the defendant's in custody interrogation and oral statements admitting he committed the five bank robberies, we find no merit to defendant's motion to suppress statements. This conclusion is bolstered by the fact that defendant voluntarily initialed memoranda describing each bank robbery and initialed the surveillance photograph. There was no violation of defendant's Fifth Amendment due process rights, nor was there a violation of procedures dictated by *Miranda*, *supra*.

**3.** Carter was read his rights and waived said rights at least four times during the day of his

An appropriate order will be entered denying defendant's motion to suppress statements.

We shall next address defendant's motion to suppress identification testimony.

## MOTION TO SUPPRESS IDENTIFICATION TESTIMONY

The defendant avers that subsequent to his arrest on September 21, 1983, a line-up was held at which certain witnesses identified the defendant as the bank robber. Defendant further alleges that said line-up was illegal in that the authorities used prejudicial procedures and that the line-up was held without counsel being present, that the line-up was unduly suggestive, and that photographic arrays were provided to witnesses which were unduly suggestive. All of the above is alleged to be a violation of the defendant's Fifth Amendment rights to due process. We find no merit to these contentions.

### Line-up

On October 3, 1983, a line-up was conducted. Detective Norman Leonard identified the photographs of said line-up (Government Exhibits 14A, 14B, 14C, 14D, and 14E; Tr. p. 197). The photographs show that five black males of varying height, weight, and build, and wearing different apparel, participated in the line-up. The defendant was in the number one position at the line-up. Each participant in the line-up was required to recite two phrases: "Don't you move" and "Do as it says" (Tr. p. 199).

The identifying parties (five victims from the banks involved—Tr. pp. 206–207) were properly instructed not to look at each other or speak to anyone. They were seated in such a way as to be separated and were instructed that if they recognized any party in the line-up, they were to fill out a form circling the number of the party (Tr. p. 199).

arrest and interrogation.

The defendant was represented by Attorney James Ecker at the line-up and Mr. Ecker made no objections prior to the start of the line-up (Tr. p. 213) or after the line-up (Tr. p. 214). Two bank tellers, Anne McGough and Charlotte Close, made positive identifications of the defendant. Said tellers circled the number one, the number of the defendant, and signed their names to the forms (Tr. p. 201).

We have reviewed the photographs of the line-up (Government Exhibits 14A to 14E) and find that the line-up was not prejudicially suggestive, nor were the procedures of the line-up improper.

Defendant's allegation that counsel was not present at the line-up is not supported by the record. Attorney James Ecker was present at the line-up and did not object to the procedures utilized, either before or after the line-up took place.

With respect to the photographic arrays (Government Exhibits 15 and 18) shown to the witnesses to the bank robberies, we do not find them unduly suggestive.

Accordingly, an appropriate order will be ordered denying the defendant's motion to suppress identification testimony.

### MOTION TO SUPPRESS EVIDENCE SEIZED FROM AUTOMOBILE

■ The defendant has moved to suppress a "starter pistol." The pistol,[4] specifically, a Crossman pellet gun, taken from the defendant's motor vehicle.

From August 25, 1983 through September 14, 1983, five banks were robbed in Allegheny County, Pennsylvania. The defendant, Lexie Little Carter, was identified as the robber of the Swissvale Branch of Mellon Bank, pictured in a surveillance photograph by Detectives James Heyl and Peter Kempton. He was also identified by the victim teller, Donna Harris, in the Swissvale surveillance photograph as the person who robbed her in the Liberty Avenue, Pittsburgh National Bank on September 14, 1983.

On September 21, 1983, Detective Regis Smith secured an arrest warrant for the defendant from City of Pittsburgh Magistrate Beverlee DeStein.

At 5:15 o'clock in the afternoon, the defendant was arrested as he arrived in his car near his residence on Locust Street in the Mt. Oliver area.

The officers ordered the defendant to get out of his car. As he started to do so, Officer Hynes looked into the car and saw on the floor between the defendant's legs the handle of a gun. When defendant got out of the car, Officer Hynes reached inside the car and removed the gun which was a long barrel pistol that turned out to be a pellet gun.

Under the facts and circumstances of the above-described arrest and seizure, it is our opinion that the defendant's constitutional rights were not violated by the arresting officers. Undoubtedly, he was in constructive possession of a pellet gun on the floor of his car between his legs, a part of which was in "plain view". *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court set forth a rule on the permissible scope of a search incident to the arrest of a person in an automobile. In the case at hand, there could be no question that the arrest was based on probable cause.

In *Belton, supra*, an automobile in which the defendant was a passenger was stopped by a New York State policeman for travelling at an excessive rate of speed. The police officer in determining that none of the four occupants owned the car, smelled marihuana, and viewed an envelope suspected of containing marihuana which was on the floor of the car. The occupants were directed to exit the car and the policeman arrested them for possession of marihuana. Each occupant was searched and the passenger compartment of the vehicle was searched. A jacket belonging to Bel-

---

**4.** The motion states "starter pistol." The evidence shows the gun to be a Crossman pellet gun. We assume the defendant desires to suppress the pellet gun from evidence.

ton was found in the passenger compartment. On unzipping the pockets of the jacket, the policeman discovered cocaine. Belton was subsequently indicted for possession of a controlled substance. The trial court denied Belton's motion to suppress the cocaine and the Appellate Division of the New York Supreme Court upheld the decision of the trial court. The New York Court of Appeals reversed.

Justice Stewart in an opinion upheld the arrest and seizure stating:

"It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so. This Court has recognized, however, that 'the exigencies of the situation' may sometimes make exemption from the warrant requirement 'imperative.' *McDonald v. United States*, 335 U.S. 451, 456 [69 S.Ct. 191, 193, 93 L.Ed. 153 (1948)]. Specifically, the Court held in *Chimel v. California*, 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)], that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence. *Id.*, at 763 [89 S.Ct. at 2040]."

*Belton, supra,* 453 U.S. at p. 457, 101 S.Ct. at p. 2862.

We agree with the analysis in *Belton* and, accordingly, will enter an order denying the defendant's motion to suppress the "starter pistol," i.e., the pellet gun.

## MEMORANDUM OPINION

### On Supplemental Motion to Suppress

This matter is before the court on the defendant's Supplemental Motion to Suppress Physical Evidence, Identification Testimony and Statements taken from Defendant asserting that a new ground for relief has arisen. A hearing was held on the motion on April 11, 1984. The new basis for the suppression is an assertion that defendant's arrest was illegal in that the "arrest warrant"[1] was invalid on its face.

This court had previously ruled on all of defendant's motions to suppress in an opinion dated March 28, 1984 denying said motions. Our previous opinion provides a procedural summary of this case which will not be repeated here.

Defendant's sole ground for relief on the pending motion is an assertion that the "arrest warrant" issued for defendant's arrest on September 21, 1983 by Magistrate Beverlee J. DeStein is illegal in that it describes the offense with which defendant is charged as occurring "on or about September 7, 1983 ..." whereas the charged bank robbery actually occurred on September 14, 1983. The defendant contends that the improper date is a fatal defect which results in the arrest being illegal. We disagree and accordingly will deny the motion.

■ The mere fact that the date of an offense is inaccurately set forth in a criminal complaint is not a material or critical variance. In *United States v. Tramunti*, 513 F.2d 1087 (2nd Cir.1975), the court was confronted with a similar matter. The defendant in *Tramunti* was arrested on an improperly drawn bench arrest warrant which charged him with jumping bail, when in fact the charge was a violation of the federal narcotics laws. The court stated that the "... error, apparently a clerical one, *in no way voids his arrest*" (emphasis supplied). The teachings of *Tramunti* can be directly applied to the facts in this case. The affidavit attached to the criminal complaint in the case *sub judice* states the following as a basis for issuance of the complaint:

1. In actuality, the document. challenged, Government Exhibit 17–A, is a form combining a criminal complaint with an arrest warrant. The arrest warrant appears at the bottom of page 1 of Government Exhibit 17–A and the return showing service of the criminal complaint and warrant on defendant appears on page 2 of Government Exhibit 17–A.

"Information received from Det. James Heyl and Peter Kemp. Information being they both have worked with Lexie Carter in the past and recognized his photo which was taken during a *Mellon Bank* hold up in *Swissvale on 9/7/83.* This same photo was shown to Donna Harris, the victim teller of *P.N.B.* at 4761 Liberty Ave., Pgh., *9/14/83* by Det. Leonard. She stated the surveillance photo from Mellon Bank was the same actor who robbed the *P.N.B. on 9/14/83.*" (Emphasis supplied.)

The dates in the affidavit are substantially accurate.[2] Apparently, the drafter of the criminal complaint viewed the above-quoted language and simply inserted the wrong date in the complaint—a mere clerical error.

In *Denton v. United States,* 465 F.2d 1394 (5th Cir.1972), a challenge was made to the complaint and arrest warrant under 28 U.S.C. § 2255. The court ruled, however, that any defect in the complaint and arrest warrant was remedied by a subsequent indictment correcting the defect. *Cf., Tanner v. United States,* 296 F.2d 218 (10th Cir.1961). The indictment in Count Five correctly charges defendant, Carter, with the bank robbery of Pittsburgh National Bank on September 14, 1983.

In addition, testimony at the hearing held on April 11, 1983 indicates the defect in the criminal complaint was orally amended before City of Pittsburgh Magistrate Joseph James at defendant's preliminary hearing held on October 3, 1983 to reflect the correct date of September 14, 1983 for the bank robbery charged in the complaint.

Deputy District Attorney Diane Berman testified that Magistrate James corrected the complaint in her presence by writing "14" over "7" and thereby showing the proper date for the robbery of Pittsburgh National Bank on Liberty Avenue in Pittsburgh.

The court's attention has been called to Rule 150 of the Pennsylvania Rules of Criminal Procedure which Provides as follows:

"Rule 150 Defects in Form, Content, or Procedure—Court Cases

"A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons or warrant ... unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of defendant."

The testimony of Deputy District Attorney Berman indicated that no objection was made by defendant's lawyer at the preliminary hearing when the oral amendment of the date was raised. Defendant contends that the case of *Commonwealth v. Thomas,* 419 A.2d 1344 (Pa.Super.1980), indicates that a defect such as a wrong date is substantive. We do not so read *Thomas.* The essence of the defect in *Thomas* was that the wrong co-conspirator was named when the crime charged was conspiracy with a particular individual. The factual situation in the case *sub judice* is distinguishable. Although we recognize no bank robbery occurred at Pittsburgh National Bank on September 7, 1983, it does not follow that no robbery occurred at all. As the court said in *Thomas,* "[t]he purpose behind the prohibition against substantive changes is to 'assure that the defendant receives proper notice of the charges filed against him and to allow him time to properly prepare his case.' " In our case, defendant was on notice that he was charged with the robbery of Pittsburgh National Bank and that said robbery involved a threat to the life of teller Donna Harris. The proper notice of the charge against defendant was present on the face of the complaint. The error in the date was a clerical/typographical error which in our

---

**2.** The September 7, 1983 date attributed to the bank robbery of Mellon Bank in Swissvale should have read September 6, 1983. However, the reason for this error was adequately explained by the testimony of Detective Regis Smith of the City of Pittsburgh Police. The significance of the September 7, 1983 date relates to its use by the clerk who drafted the criminal complaint document.

opinion does not constitute a substantive defect, but merely a defect of form as contemplated by Rule 150 of the Pennsylvania Rules of Criminal Procedure.

This conclusion is bolstered by a review of Rule 229 of the Pennsylvania Rules of Criminal Procedure. Rule 229 provides in pertinent part as follows:

"Rule 229 Amendment of Information

"The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, *or the date charged,* provided the information as amended does not charge an additional or different offense...." (Emphasis supplied.)

If a criminal information can be amended to correct the date charged, we see no reason why a similar correction would be prohibited when a criminal complaint is involved.

Under the cases referred to above and the facts and the circumstances of this case, we do not find any fatal defect in the criminal complaint which would invalidate the arrest and/or the fruits of said arrest.

We also take note of a line of cases involving variances between the pleadings in an indictment and proof at trial.

For example, in *United States v. Edwards,* 465 F.2d 943 (9th Cir.1972), the defendant on appeal argued that his right to indictment by grand jury was violated when the trial court corrected the indictment to conform to the government's proof. The indictment incorrectly charged that the attempted bank robbery with which defendant was charged occurred "in the City of Berkeley, County of Alameda, State and Northern District of California." The attempted bank robbery actually occurred in the City of San Francisco, California. The trial court ruled that the words "City of Berkley, County of Alameda" were surplusage. The trial court instructed the jury that a clerical error had been made by the office of the United States Attorney, and that the words setting forth the wrong city and county in California were surplusage. The trial court was affirmed on appeal. In *Cromer v. United States,* 142 F.2d 697 (D.C.Cir.1944), defendant was charged in an indictment under the narcotics laws setting forth that the quantity of drugs involved was 8,301 grains. The proof showed that the quantity was 58.5 grains.

On this issue, the court in *Cromer,* quoting from *Berger v. United States,* 295 U.S. 78, 82 (1935) stated:

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." (Cases cited are omitted.)

"Evidently Congress intended by the amendment to § 269 [3] to put an end to the too rigid application, sometimes made, of the rule that error being shown, prejudice must be presumed; and to establish the more reasonable rule that if, *upon an examination of the entire record, substantial prejudice does not appear, the error must be regarded as harmless.*

"The variance in this case caused no substantial prejudice to the defendant and, therefore, must be regarded as harmless. The cases cited by appellant adopting the more rigid tests in defining the rule against variance have been overruled by the opinion in *Berger v. United States.*"

Although the above quoted language applies to an indictment and not a criminal complaint, it can be applied to the facts and circumstances of this case since we feel an

---

**3.** 28 U.S.C. § 391. This statute has been recodified in Rule 52, Fed.R.Crim.P.

indictment is a more critical document when compared to the criminal complaint which is at issue here.

Applying the standards of *Berger,* as quoted in *Cromer, supra,* we find that the defendant, Lexie Little Carter, was not substantially prejudiced by a mere clerical error in the date of the offense which appeared on the face of the criminal complaint. To find otherwise would overly emphasize form over substance.

An appropriate order will be entered denying defendant's supplemental motion to suppress.