448 A.2d 553

**COMMONWEALTH of Pennsylvania**

v.

**Jerry IVY, Appellant.**

Superior Court of Pennsylvania.

Submitted May 6, 1981.

Filed July 16, 1982.

---

**5.** Husband must also pay approximately $100.00 per month for taxes and insurance for the joint residence.

Louis Lipschitz, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and LIPEZ, JJ.

CAVANAUGH, Judge:

Appellant Jerry Ivy was convicted by a jury of five counts of robbery, five counts of criminal conspiracy, and one count of possessing an instrument of crime. Post-verdict motions were denied and appellant was sentenced to consecutive terms of three to six years incarceration on each of the five robbery counts and concurrent terms of one to three years on each of the conspiracy charges. Sentence was suspended on the charge of possessing an instrument of crime. Appellant filed a timely appeal to this court. For the reasons discussed below, we vacate the judgment of sentence on four out of the five criminal conspiracy charges and affirm the remaining judgments of sentence.

At approximately 9:00 p.m. on April 2, 1979, appellant and two companions boarded a SEPTA bus at Hedge and Orthodox Streets in Northeast Philadelphia. The appellant grabbed the driver, James Carroll, in a headlock, put a gun

to his throat and said, "Don't move sucker. This is a stick-up." Mr. Carroll raised his hands over his head and appellant stated, "Don't move or I will blow your brains out." While appellant held Mr. Carroll at gun point, his companions moved among the passengers collecting money and other possessions, threatening to have Mr. Carroll killed unless the passengers complied. Charles Donnelly, a passenger seated directly behind Mr. Carroll, refused to give up his wallet. Appellant, without releasing his hold on Mr. Carroll, reached over and placed the gun to Mr. Donnelly's cheek, ordering him to give up the wallet or have his brains blown out. Mr. Donnelly then turned over his wallet. When they had completed the robbery, appellant and his two companions fled on foot.

Mr. Carroll proceeded approximately three blocks and then stopped a police car and informed the officers in it of the robbery. The police officers took descriptions of the robbers from several of the passengers. One of the passengers, Frederick Mongan, told the police that he had seen the robbers before in the neighborhood. He agreed to ride around the neighborhood with a police detective in order to search for the robbers. He did not see appellant at that time but he did identify one of the accomplices. While in the police car, Mr. Mongan was shown a number of photographs, but he was unable to identify anyone. The appellant's picture was not among those shown to Mr. Mongan.

At approximately 10:30 p. m. the same evening, appellant was arrested on the basis of information received from an anonymous telephone caller. While appellant was waiting in the squad room at the police station, the bus driver and several of the passengers were brought in individually and asked if they could identify anyone. Three passengers, Frederick Mongan and John and Mary Korabik, identified appellant as the gunman in the robbery. Mr. Carroll, the bus driver, and Mr. Donnelly, the passenger who had a gun held to his cheek, did not make positive identifications at that time.

Following a pre-trial suppression hearing, the lower court granted appellant's motion to suppress the identifications made at the police station as the product of an unnecessarily suggestive identification procedure. The suppression court refused, however, to suppress later in-court identifications, finding that they were independently based. At trial, Mr. Carroll, Mr. Donnelly, Mr. Morgan, and Mr. and Mrs. Korabik all positively identified the appellant as the gunman in the robbery.

Appellant first argues that the lower court erred in refusing to suppress the in-court identifications made by the five Commonwealth witnesses. He contends that the identifications were tainted by the suggestive pre-trial confrontation and had no independent basis. Because the suppression court ruled that the identification procedure which occurred at the police station was unnecessarily suggestive, the Commonwealth had a burden to establish by clear and convincing evidence that the witnesses' in-court identifications had a basis independent of the police station confrontation before the in-court identifications could be admitted. *Commonwealth v. Townsend*, 280 Pa.Super. 155, 421 A.2d 452 (1980). In reviewing the suppression court's determination that the in-court identifications did have an independent basis, "we consider only the Commonwealth's evidence and so much of the evidence presented by the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Commonwealth v. Townsend, id.*, 280 Pa.Superior at 158, 421 A.2d at 454. The factors to be considered in determining whether the in-court identification testimony of the five Commonwealth witnesses was based on their observations of the appellant while on the bus and was purged of any taint stemming from the police station confrontation are: (1) The witnesses' opportunity to observe the criminal act; (2) any discrepancy between pre-confrontation descriptions and the appellant's actual appearance; (3) any identification of anyone other than the appellant; (4) any failure to identify

appellant; (5) the lapse of time between the robbery and the confrontation; (6) the witnesses' degree of attention; and, (7) the degree of certainty in identifying the appellant. *Commonwealth v. Townsend, id.,* 280 Pa.Superior at 159, 421 A.2d at 454.

The evidence presented at the suppression hearing established that all five of the Commonwealth witnesses had a good opportunity to observe the appellant during the bus robbery, which lasted for three to five minutes. The lighting on the bus was good, the appellant was not wearing any kind of mask which would have concealed his features, and all of the witnesses were within a few yards of appellant. Obviously the witnesses' attention would have been focused on the three robbers during the course of the robbery, particularly on the appellant, since he was the one holding a gun. The confrontation at the police station took place only hours after the robbery. None of the witnesses ever identified anyone other than the appellant as being the gunman.

■ Notwithstanding appellant's claim to the contrary, the record discloses that John and Mary Korabik both gave fairly detailed descriptions of the appellant within minutes of the robbery and these descriptions were similar to the appellant's actual appearance. Mr. Mongan, while still on the bus, told police that he recognized the gunman as someone from his neighborhood. This lends support to a finding that he had a basis for identifying appellant independent of the police station confrontation. *Commonwealth v. Johnson,* 291 Pa.Super. 566, 436 A.2d 645 (1981). Furthermore, Mr. Mongan had already given a detailed description of appellant to police at the station house before the appellant was brought in. Mr. and Mrs. Korabik and Mr. Mongan all spontaneously identified appellant when they saw him at the police station, *before* they were asked by police if they could identify anyone and before conferring with each other. All three of them made positive identification statements to police while still at the station and none of them failed to

identify appellant at any subsequent time. We conclude that the in-court identifications of these three witnesses clearly had a basis independent of the police station confrontation and were thus properly admitted.

Mr. Donnelly, the passenger who surrendered his wallet only after being threatened at gun-point, did not make a positive identification of appellant at the police station on the night of the robbery. He testified at the suppression hearing that when he was asked by a police detective on the night of the robbery whether he could identify anyone in the squad room, he replied, "I'm not positive. I think that I recognize the one man in there, but . . . I'll have to say that I can't recognize him positively." He explained that he was too "shook up" the night of the robbery to make an identification but that a day or two later he "settled down" and "things started focusing" in his mind and he then felt that he could make an identification. He did, in fact, make a positive identification of appellant at the suppression hearing, at which time he testified that his identification was based on seeing appellant on the bus and *not* on seeing him at the police station or on any conversation he had at the police station with the other passengers.

Although Mr. Donnelly's failure to identify appellant at the police station is a factor to be considered in determining whether his in-court identification has an independent basis, it is only one of several factors. In order to determine whether the Commonwealth has met its burden of proving an independent basis, a court must consider the totality of the circumstances, *Commonwealth v. Fowler*, 466 Pa. 198, 204, 352 A.2d 17, 20 (1976). We agree with the suppression court's conclusion that the burden was met with regard to Mr. Donnelly's identification. His failure to identify the appellant at the police station was brought out on cross-examination at the trial and could thus be considered by the jury in determining what weight to give his identification. Its admission was not improper.

The bus driver, Mr. Carroll, also failed to make a positive identification at the police station. Like Mr. Donnelly, he testified that after he went home and had time to think about the robbery, he became certain that he could identify the gunman and he did, in fact, identify appellant at the suppression hearing. However, Mr. Carroll admitted during cross-examination at the suppression hearing that he knew that several passengers had identified appellant at the police station and that this fact influenced him in making his identification. In spite of Mr. Carroll's testimony that his later identification was based on seeing appellant on the bus and not on the confrontation at the police station, we feel that it would be difficult, if not impossible, to remove the taint of the improper police station confrontation in view of Mr. Carroll's admission that he was influenced by the other witnesses' police station identifications.

■ We find, however, that in view of the positive identifications made by four other witnesses, the admission of Mr. Carroll's identification at trial was harmless error under *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). *See Commonwealth v. Silver*, 260 Pa.Super. 232, 393 A.2d 1239 (1978).

Appellant also claims that trial counsel was ineffective for failing to request a mistrial after objecting to a portion of the prosecutor's closing argument. The objectionable statement occurred following the prosecutor's reference to the anonymous phone call received by the police which led to appellant's arrest. The prosecutor was apparently attempting to suggest to the jury that given the circumstances surrounding the phone call, they could infer that the caller had first or second-hand information about the appellant's involvement in the robbery. After pointing out to the jury that at the time the phone call was received there had been no media coverage of the robbery, the district attorney said:

From the lack of any newspaper or other media involvement, what conclusion can you draw? I suggest that the conclusion that you could draw is that someone who heard

or saw that incident or heard somebody say something about that incident, heard something and they—

Counsel for appellant objected at this point and the objection was sustained. The court then instructed the jury to ignore that portion of the argument.

■ Appellant argues that counsel's objection was not sufficient and that he should have requested a mistrial. We do not agree. As we have stated on numerous occasions:

a new trial is not mandated every time a prosecutor makes an improper remark. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977). To constitute reversible error the language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975).

*Commonwealth v. Smith*, 289 Pa.Super. 356, 433 A.2d 489, 495 (1981). The challenged statement in the instant case certainly does not fall in this category. Since the declaration of a mistrial would have been unwarranted, counsel was not ineffective for failing to request one.

■ Finally, appellant claims that he should have been convicted and sentenced on only one count of conspiracy, rather than five. The Commonwealth does not contest this claim. In fact, it acknowledges that "the multiple robberies of the passengers on this bus appear to have been the object of the same conspiratorial agreement or continuous conspiratorial relationship," and that under the provisions of 18 Pa.C.S.A. § 903(c), appellant is guilty of only one charge of conspiracy. (Appellee's brief at 3, nt 2). We agree. We therefore affirm the conviction of conspiracy and judgment of sentence on bill No. 206 and vacate the judgment of sentence on the four remaining counts of conspiracy.

Judgment of sentence on all counts of robbery and one count of conspiracy is affirmed. Judgment of sentence on the remaining counts of conspiracy is vacated.