476 A.2d 1316

**COMMONWEALTH of Pennsylvania**

v.

**James McINTOSH, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 1983.

Filed May 4, 1984.

---

256

Robert F. Pappano, Assistant Public Defender, Media, for appellant.

Helen T. Kane, Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, President Judge, and HESTER and LIPEZ, JJ.

LIPEZ, Judge:

Defendant James McIntosh was convicted in a jury trial of robbery, 18 Pa.C.S. § 3701, theft by unlawful taking, 18 Pa.C.S. § 3921, recklessly endangering another person, 18 Pa.C.S. § 2705, terroristic threats, 18 Pa.C.S. § 2706, possession of firearms without a license, 18 Pa.C.S. § 6106, committing crimes with firearms, 18 Pa.C.S. § 6103, and criminal conspiracy, 18 Pa.C.S. § 903. Post-verdict motions were denied, and defendant was sentenced to ten to twenty years' imprisonment for robbery and a consecutive two to four years' imprisonment for conspiracy, with sentences suspended on all other charges. In this appeal, defendant contends: (1) that he should be granted a new trial on all charges because the lower court erred in allowing witnesses who had viewed an uncounseled photographic array to make in-court identifications of defendant; and (2) that his conspiracy conviction should be reversed because of a fatal variance between the criminal information on that charge

260

and the proof at trial. We agree that the judgment of sentence for conspiracy must be reversed, but we find that defendant's motion for a new trial on the other charges was correctly denied.

## I

The charges were brought in connection with an incident that occurred at Wyeth Laboratories in Radnor, Pennsylvania at approximately 12:00 noon on June 14, 1979. Lewis Oswald, an employee of Wyeth's cashier's office, was approached by a man with a revolver who ordered him to open the door to the cashier's cage. When Oswald did so, a second man entered the office, ordered him to lie on the floor, and handcuffed his wrist and ankles. Gerry Mixon, another Wyeth employee, saw the two men in the cashier's office and, believing something was wrong, left the area to notify security.

Catherine Welch, another Wyeth employee, was walking down the hallway to the cashier's office to cash a check when she was stopped by a young man who asked her if she had a match. She replied that she did not, then walked up to the cashier's window, where she saw a second man kneeling on the floor. A third man was also in the cashier's office, and one of them pointed a gun at her. The men in the office then ran, carrying a blue canvas bag. Kate Eby, another Wyeth employee, saw the two men with the blue bag leave the cashier's cage, join a third man in the hallway, and leave the building. The three men also passed another group of Wyeth employees as they fled from the building, nearly stepping on the foot of one of the employees, Maria Weber, as they did so. After the men left, a red car which had been noticed by several employees because it lacked a Wyeth parking sticker was found to be gone from the parking lot. Approximately $47,000.00 had been taken from the cashier's office.

Stephen Cauterucci and Thomas Tone were eating their lunch in a truck parked in a lot a few miles from Wyeth Laboratories on the day of the incident. At about 11:30

that morning, they had seen a black car and a red car pull into an adjacent parking lot and the two men who had been in the black car park it and get into the red car. The red car then left the lot. About twenty-five minutes later, Tone and Cauterucci saw the same red car speed into the parking lot and park. Four men got out of that car and entered the black car, which was parked next to that of Phyllis Murphy, who was in her car about to pull out of the parking lot. Murphy waited to let the black car leave first, but when the driver, whom she later identified as defendant, had trouble starting the car, she drove away. Tone and Cauterucci then saw one of the men get out of the car and walk toward a nearby train station, carrying a blue bag. In the meantime, however, the other men succeeded in starting the black car. The man with the bag got back into the car and drove it from the lot. Tone and Cauterucci later identified defendant as one of the men seated on the driver's side of the car.

At trial, Catherine Welch, Gerry Mixon, Maria Weber, Phyllis Murphy, Thomas Tone and Stephen Cauterucci all made positive in-court identifications of defendant as one of the men involved in the robbery. Defendant contends that none of these witnesses should have been permitted to make in-court identifications because all of them had previously been shown a photographic array, including a picture of defendant, without the presence of defendant's counsel. He contends that the in-court identifications were the result of exposure to defendant's picture in this impermissible procedure and hence should have been excluded. The suppression court, however, in granting defendant's motion to suppress the identifications made at the time of photo array itself, found that the witnesses had an independent basis for their in-court identifications and that such identifications were therefore admissible. We agree.

It is well established that despite a witness' participation in an uncounseled or suggestive pre-trial identification procedure, his in-court identification may be admitted so long as the Commonwealth establishes by clear and convincing evidence that the in-court identification has a

basis independent of the illegal pretrial confrontation. *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970); *Commonwealth v. Townsend*, 280 Pa.Super. 155, 421 A.2d 452 (1980). In reviewing the suppression court's determination that the in-court identifications here did have an independent basis, we consider only the Commonwealth's evidence and so much of the evidence presented by the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Ivy*, 302 Pa.Super.Ct. 114, 119, 448 A.2d 553, 555 (1982). The factors to be considered in determining whether the in-court identification testimony of the witnesses was based on their observations at the time of the robbery and thus had a basis independent of the tainted photographic array are: (1) the witnesses' opportunity to observe the criminal act; (2) the existence of any discrepancy between the witnesses' prior description of the criminal and the defendant's actual appearance; (3) any identification of anyone other than the defendant; (4) any failure to identify defendant; and (5) the lapse of time between the crime and the identification. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Commonwealth v. Whiting, supra.*

■ As to witnesses Tone, Cauterucci and Murphy, the evidence at the suppression hearing clearly establishes the existence of an independent basis for in-court identification. All three of these witnesses had ample opportunity to observe defendant for several minutes as he and his companions attempted to start the black car. The witnesses' attention had been drawn to the four men by their unusual behavior in speeding into the parking lot and changing cars. All three witnesses had an unobstructed view of the two men on the driver's side of the car in bright daylight, Tone and Cauterucci from a distance of twenty to thirty feet, Murphy from only a car's width away. The record does not reveal whether any of the three witnesses gave a prior description of the men to police, beyond a general statement describing the color of the cars and the fact that the men were black. However, neither Tone nor Murphy ever failed

to identify defendant or identified anyone other than defendant. Cauterucci never failed to identify defendant and the only occasion on which he identified anyone other than defendant was when he was shown the photo array and picked four pictures, defendant's among them, as being of the four men involved in the incident. Moreover, Tone and Cauterucci's first identification of defendant at the photo array occurred only four days after the incident. Murphy first identified defendant on June 27, thirteen days after the incident. All three witnesses testified that their in-court identifications were made on the basis of their recollection of the incident and not on their having viewed defendant's photograph in the array or having seen him at his preliminary hearing or arraignment. We think that in light of these witnesses' excellent opportunity to observe defendant and in the absence of any factors casting serious doubt upon the accuracy of their identifications, the lower court correctly found that an independent basis existed for their in-court identifications.

As to witnesses Gerry Mixon and Catherine Welch, we also think that the lower court correctly found an independent basis for in-court identifications. Both were able to observe the robbers in good light under circumstances likely to focus attention upon them. Mixon viewed defendant for several seconds from a distance of about twenty feet and Welch viewed him for one or two minutes from only two feet away. Both witnesses' prior descriptions of defendant, though sketchy, were accurate. Although both witnesses failed to identify defendant positively in the photographic array four days after the incident, neither of them ever identified anyone other than defendant.[1] Both witnesses made positive identifications of defendant at the suppression hearing and testified that their identifications were based upon having seen defendant during the robbery and not upon having seen him in the

1. Welch did pick a photograph which was not of defendant out of the array, but it is clear from the record that she believed the photograph was of the other man she had seen in the cashier's office, not the man she later identified as defendant.

photographic array or at preliminary proceedings. We think that this record bears out the suppression court's findings of an independent basis for Mixon's and Welch's in-court identifications. Although the failure to identify defendant in the photo array is a factor that we must consider in assessing this finding, it is only one of several factors. We agree with the lower court that these other factors, particularly the witnesses' excellent opportunity to view the robbers during the incident, outweigh the failure to make a photographic identification in this case. Thus the failure to identify defendant's photograph was properly treated as a factor to be brought out on cross-examination as affecting the weight rather than the admissibility of the in-court identifications. *See Commonwealth v. Silver*, 499 Pa. 228, 237, 452 A.2d 1328, 1332 (1982); *Commonwealth v. Ivy, supra*, 302 Pa.Super. at 121, 448 A.2d at 556.

As to witness Maria Weber, we agree with defendant that the suppression court's decision to permit an in-court identification may have been erroneous. Weber's opportunity to observe defendant was poorer than that of the other witnesses, for she saw him only as he ran out of the building. She was unable to identify him in the photo array, and made a positive identification only after seeing a photograph in the newspaper which showed defendant in police custody and indicated that he had been arrested for the robbery at Wyeth. Moreover, the suppression court's findings of fact contained no specific references to Weber which would support its conclusion that she had an independent basis for making an in-court identification. Even if admission of her identification was error, however, we must conclude that it was harmless in view of the positive identifications made by five other witnesses and the extensive cross-examination on the factors casting doubt on her identification. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Ivy*, 302 Pa.Super.Ct. 114, 122, 448 A.2d 553, 557 (1982). Accordingly, we hold that defendant's motion for a new trial based on the admission of the in-court identifications was correctly denied.

## II

Defendant's second claim is that his conspiracy conviction should be reversed because of a variance between the information on that charge and the proof at trial. The conspiracy information charged defendant of conspiring with Gerald Scott to commit the crimes at Wyeth Laboratories. Although Gerald Scott was originally charged along with defendant, all charges against him were later dropped by the Commonwealth, and when defendant went to trial it was with another individual as co-defendant. The information was never amended to name this co-defendant as co-conspirator, however, nor did the information contain any language charging defendant with conspiring with unknown persons or with anyone other than Gerald Scott. At trial, Gerald Scott was never mentioned by any of the Commonwealth's witnesses, nor was there any evidence indicating that Gerald Scott was one of the four men involved in the incident.

We agree with defendant that this variance between the information and the proof is fatal to the validity of the conspiracy conviction. The purpose of a criminal information is to notify the defendant of the charge he has to meet. *Commonwealth v. Petrillo*, 338 Pa. 65, 77, 12 A.2d 317, 324 (1940). Although the information is not to be read in an overly technical manner, we must arrest judgment where an error in the information is one that could "mislead the defendant or [that] involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, or precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Commonwealth v. Pope*, 455 Pa. 384, 390–91, 317 A.2d 887, 890, (1974). In *Commonwealth v. Thomas*, 278 Pa.Super.Ct. 39, 419 A.2d 1344 (1980), this court held that naming the wrong co-conspirator in an information had precisely such prejudicial effect:

> We think it clear that an outright substitution of a named co-conspirator in a complaint constitutes "a different set of events" and could require "materially different defens-

es" of the accused. A charge of conspiring with one [person] to commit certain offenses must necessarily embrace a unique factual setting which is radically altered when the Commonwealth seeks to charge that appellant conspired with [a second person] and not [the first]. Further, a proposed defense to a conspiracy charge may be rendered useless and a new defense strategy called for depending upon whom the defendant is alleged to have conspired with.... When a defendant can be misled by the complaint, then he does not have fair notice of the charges pending....

*Id.*, 278 Pa.Superior Ct. at 48–49, 419 A.2d at 1349–50. We thus conclude that the variance between the information here, which charged conspiracy only with Gerald Scott, and the proof at trial, which, if it showed a conspiracy at all, showed only that defendant conspired with his co-defendant Stanley Pugh or other unknown persons, requires reversal of the conspiracy conviction in this case.[2]

■ It is not clear from the record of sentencing proceedings in this case whether the conspiracy conviction actually influenced the court in imposing sentence on the

2. The Commonwealth's argument that the variance is harmless because the information gave defendant as much notice as would a permissible information charging him with conspiracy with persons unknown was also rejected in *Thomas:*

> This is ... not a case wherein the complaint alleges a conspiracy, but avers that the identities of one or more co-conspirators are unknown, 16 Am.Jur.2d, Conspiracy, § 28 .... Indeed, the Supreme Court over 100 years ago drew a marked distinction between the latter cases and the issue at hand. In *Rough v. Commonwealth,* 78 Pa. 495 (1875), where the defendant was accused of selling liquor without a license, the name of his buyer was inserted on the space theretofore left blank in the indictment. The court did not find this to be a material change and stated, "We are of the opinion the amendment was proper. Had another name been in the indictment, and evidence offered exhibiting a variance, the case would have fallen within the letter of the Act [permitting only amendments to indictments which are 'not material to the merits of the case']. It seems to us a blank is not so great a variance as the averment of a wrong name. The former merely conveys no information; *but the latter actually misleads."* 78 Pa. at 496 (emphasis added); see Anno. 14 A.L.R.3d 1358.

*Id.,* 278 Pa.Superior Ct. at 48–49, 419 A.2d at 1349–50.

other convictions. However, we certainly cannot say that it is obvious that the same sentences would be imposed if we were to remand for resentencing on those convictions, *see Commonwealth v. Crowson*, 267 Pa.Super.Ct. 46, 405 A.2d 1295 (1975), or that such a remand would be "a mere procedural exercise," *see Commonwealth v. Grant*, 235 Pa.Super.Ct. 357, 341 A.2d 511 (1975). As it thus appears that the invalid conspiracy conviction *may* have influenced the sentence on one or more of the other convictions, we will vacate all of those sentences and remand for resentencing on the valid charges without consideration of the invalid one. *See Commonwealth v. Thomas, supra*, 278 Pa.Super. at 49–51, 419 A.2d at 1350–51; *Commonwealth v. Lockhart*, 223 Pa.Super.Ct. 60, 296 A.2d 883 (1972).

Judgment of sentence for conspiracy is reversed and defendant is discharged on that count. Judgments of sentence on all other charges are vacated, and the case is remanded for resentencing on those counts. Jurisdiction is relinquished.