J-S22007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MITZILENE DUNMYER-BROWN, | |
| Appellant | No. 1136 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 27, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002890-2016

BEFORE:  BENDER, P.J.E., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 26, 2018**

Appellant, Mitzilene Dunmyer-Brown, appeals from the judgment of sentence imposed after she was convicted of theft by unlawful taking, 18 Pa.C.S. § 3921(a), and receiving stolen property, 18 Pa.C.S. § 3925(a).  We affirm.

The trial court summarized the factual background and procedural history of this case as follows:

> In October of 2015[,] Appellant … entered into an agreement with Arlis Smith to help Ms. Smith with the care of her adult niece,[3] Shawnay Baughn, who had difficulty taking care of herself.  [At some point] after [Appellant] began her service as Ms. Baughn's caregiver at the Smith household[,] Ms. Smith was unable to locate a set of envelopes containing $4,000 in cash that she had hidden away.  Ms. Smith intended to use this money to pay for her great-grandson's school tuition.[4]

---

[*] Retired Senior Judge assigned to the Superior Court.

[3] Defense counsel describes the relationship between Ms. Baughn and M[s]. Smith as that of great-niece and great-aunt, but [they] simply refer to one another as niece and aunt in their testimony.

[4] Ms. Smith testified that she hid the cash to prevent her husband from finding out that she was planning to subsidize her great-grandson's tuition, contrary to her husband's wishes.

Ms. Smith looked all over the house for the missing envelopes and walked into the second floor bathroom where [Appellant] had been assisting Ms. Baughn with her bath. Ms. Smith advised [Appellant] that she was trying to locate the envelopes containing money. [Appellant] offered to join Ms. Smith in the search.[5] Shortly thereafter, however, Ms. Smith uncovered the envelopes under the towels on a shelf in the same bathroom where [Appellant] was bathing Ms. Baughn. Ms. Smith showed the envelopes to [Appellant] and returned to her bedroom, leaving the envelopes hidden beneath the towels. Ms. Smith did not check the envelopes to see if the money was still inside, but she had no reason to believe that … the money was not there.

[5] At no point did Ms. Smith authorize [Appellant] to take or possess that money.

Later that day Ms. Smith went to retrieve the envelopes from the bathroom, only to discover that they were not under the towels where she had last seen them. Ms. Smith asked [Appellant] whether or not she knew where the envelopes had gone. [Appellant] told Ms. Smith that Ms. Smith had moved the envelopes from under the towels, something that Ms. Smith did not recall doing.

At some point, weeks after [Appellant] had stopped working for Ms. Smith, [Appellant] told Ms. Smith, via text message, to check the hallway for the envelopes. Ms. Smith did as [Appellant] suggested and found the envelopes in a jewelry box in the hallway, but they were empty. Ms. Smith never found [the] missing $4,000 that had been in the envelopes.

It was more than a mere coincidence to Ms. Smith that [Appellant] would happen to know the precise location in the hallway where the now-empty envelopes had been moved. Also, Ms. Smith was troubled by the fact that [Appellant] did not respond to Ms.

Smith's text messages inquiring about the possible whereabouts of the missing funds after Ms. Smith found the empty envelopes.

A few weeks later, Ms. Baughn told Ms. Smith that while Appellant was bathing her, she saw Appellant pull out the envelopes from under the towels, remove the money, and conceal the money in her pants. Ms. Baughn testified that she did not tell Ms. Smith about this incident right away because [Appellant] had threatened to retaliate against Ms. Baughn if she spoke about the theft. Ms. Baughn was scared of [Appellant].

Ms. Smith reported the theft of the money to the police on January 14, 2016. [Appellant] was arrested on February 1, 2016[,] and was preliminarily arraigned on February 2, 2016. [Appellant's] preliminary hearing was on March 17, 2016. This case was first listed for trial on September 26, 2016. The trial date had been continued a few times due to outstanding discovery requests issued by [Appellant] to third parties.

On November 22, 2016, Appellant, through counsel, filed a "Third Supplemental Omnibus [Pre-trial] Motion in the Nature of Motion to Dismiss or Quash," arguing the bill of information had to be quashed because it failed to state the date of the offense with sufficient specificity. On December 20, 2016, the same day this case was scheduled for trial, counsel for the defense presented oral argument on the motion to quash the bill of information for lack of specificity with respect to the date of the offense. We denied this motion and proceeded to trial.

[Appellant] waived her right to a jury trial and was tried before the undersigned. The undersigned found Appellant guilty of Theft by Unlawful Taking and Receiving Stolen Property. Both charges were graded as felonies of the third degree. Sentencing was deferred to February 27, 2017[,] so that a Pre-Sentence Investigation Report could be prepared.

Sentencing was deferred again to March 27, 2017[,] due to a scheduling conflict with defense counsel. On March 27, 2017, Appellant made an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 703(b), which was denied. The undersigned then sentenced Appellant to a two year period of probation and ordered her to pay … $4,000.00 in restitution to Ms. Smith. No post-sentence motions were filed.

[Appellant] filed a timely notice of appeal on March 31, 2017. She then filed a [Pa.R.A.P.] 1925[(b)] Statement of [Errors]

Complained of on Appeal on April 3, 2017.[1]  Appellant presents a lengthy Statement of Errors Complained of on Appeal: "[The trial c]ourt erred in denying [Appellant's] motion to quash the bills of information for lack of specificity."[6]

> [6] Although Appellant['s] six-page 1925(b) statement is far from concise, as required by the Rules of Appellate Procedure, we do not recommend that the Superior Court find that she waived her right to appeal the issue at hand.[2] We have no reason to believe the violation was committed in bad faith.  *See PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 614 (Pa. Super. 2014).[3]

---

[1] The trial court's docket indicates that Appellant filed her Rule 1925(b) concise statement before the trial court had issued any order directing her to do so.

[2] Although the trial court says Appellant's Rule 1925(b) statement is six pages long, our review of the record shows it is eight pages long.

[3] We agree that Appellant has not waived her claim.  First, although Appellant's Rule 1925(b) statement is unnecessarily lengthy, the trial court did not indicate that its review was impeded, nor that Appellant had filed her statement in bad faith.  *See Mahonski v. Engel*, 145 A.3d 175, 182 (Pa. Super. 2016) (finding waiver where the appellants filed their statements in "bad faith, deliberately circumventing the purpose of Rule 1925(b) in violation of our Rules of Appellate Procedure"); *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803-04 (Pa. Super. 2007) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.  When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.") (citations omitted).  Second, as discussed further *infra*, Appellant's issue on appeal raises whether the trial court had subject matter jurisdiction.  "[I]t is axiomatic under Pennsylvania law that challenges to subject matter jurisdiction are non-waivable." *Commonwealth v. Elia*, 83 A.3d 254, 264 n.4 (Pa. Super. 2013) (citation omitted).  Finally, "[i]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation … therefore, we look first to the language of that order." *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (citations omitted).  In the case *sub judice*, the trial court did not enter an order directing Appellant to file a Rule 1925(b) concise statement.  Accordingly, we decline to find waiver and will proceed to the merits.

Trial Court Opinion (TCO), 6/6/2017, at 1-5 (internal citations omitted; some brackets added).

Presently, Appellant raises a single issue for our review:

Did the lower court err in denying [Appellant's] motion to quash the bills of information and motion for extraordinary relief on grounds of lack of specificity as to date and time?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant claims that the trial court erred in denying her motion to quash and motion for extraordinary relief, in which Appellant complained of the lack of specificity as to date and time in the bill of information. *See id.* She argues that "[t]he bill of information and the discovery materials failed to adequately place [her] on notice of the date and time of the alleged theft, thereby depriving her of her right to defend herself." *Id.* at 12. As a result, she claims that she "was unable to develop an alibi[,]" and could not "determine where she was--be it at school, at work, visiting friends, or out of town--when the theft allegedly happened." *Id.* at 18. In addition, Appellant says she "was further deprived of the ability to investigate the whereabouts of [Ms. Baughn] at the time of the alleged incident." *Id.* at 19. In particular, Appellant asserts that she did not have the ability "to establish a 'reverse alibi' that [Ms. Baughn] was elsewhere during the date of the alleged theft from the home of [Ms. Smith]." *Id.*

Although Appellant styles her statement of the question involved as whether the trial court erred in denying her motion to quash and motion for extraordinary relief, the substance of her brief challenges whether the trial

court had subject matter jurisdiction. *See id.* at 15-16 (discussing the requirements for subject matter jurisdiction with respect to criminal defendants) (citing, in part, **Commonwealth v. Jones**, 929 A.2d 205, 210 (Pa. 2007)).[4] Thus, "[t]he issue for review centers on the question of subject matter jurisdiction. As this question is purely one of law, our standard of review is *de novo*, and our scope of review is plenary." **Jones**, 929 A.2d at 211 (citation omitted).

Our Supreme Court has observed that there are "two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution." **Id.** at 210 (citation omitted). Specifically, with respect to the second requirement pertaining to formal notice, our High Court has explained:

> To invoke this jurisdiction, something more is required; it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged. This accusation enables the defendant to prepare any defenses available to him, and to protect himself against further prosecution for the same cause; it also enables the trial court to pass on the sufficiency of the facts alleged in the indictment or information to support a conviction. The right to formal notice of charges, guaranteed by the Sixth

---

[4] **Cf. Elia**, 83 A.3d at 264 n.4 (recognizing that, although the appellant had not framed his issue as a challenge to the trial court's subject matter jurisdiction in his Rule 1925(b) statement, there was no waiver because challenges to subject matter jurisdiction are non-waivable) (citation omitted).

Amendment to the Federal Constitution and by Article I, Section 9 of the Pennsylvania Constitution, is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court.

*Id.* at 211-12 (original brackets and citation omitted).

To satisfy this requirement, an information is used "to notify the defendant of the charge he has to meet." ***Commonwealth v. McIntosh***, 476 A.2d 1316, 1321 (Pa. Super. 1984) (citation omitted).[5] Pennsylvania Rule of Criminal Procedure 560 governs the requirements of an information and provides, in relevant part, the following:

(A) After the defendant has been held for court following a preliminary hearing or an indictment, the attorney for the Commonwealth shall proceed by preparing an information and filing it with the court of common pleas.

(B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

\*\*\*

(3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, ***provided that if the precise date is not known*** or if the offense is a continuing one, ***an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient***;

Pa.R.Crim.P. 560(A), (B)(3) (emphasis added).

_____

[5] ***See also*** Pa.R.Crim.P. 103 (defining information as "a formal written statement charging the commission of an offense signed and presented to the court by the attorney for the Commonwealth after a defendant is held for court, is indicted by the grand jury, or waives the preliminary hearing or a grand jury proceeding").

Further, this Court has explained:

It is the duty of the prosecution to fix the date when an alleged offense occurred with reasonable certainty…. However, due process is not reducible to a mathematical formula, and the Commonwealth does not always need to prove a single specific date of an alleged crime. Permissible leeway varies with the nature of the crime and the age and condition of the victim balanced against the rights of the accused.

***Commonwealth v. Einhorn***, 911 A.2d 960, 977-78 (Pa. Super. 2006)

(internal citations, quotation marks, and brackets omitted).[6]

In addition, our Supreme Court has stated:

[A] variance between the allegations of the indictment and the proof offered at trial will not be deemed fatal unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right. … [I]t is apparent that the same considerations which measure the fairness of a variance between indictment and proof must be utilized to test the reasonableness of the interval of time in which it is proved that the crime has been committed.

***Commonwealth v. Devlin***, 333 A.2d 888, 891 n.1 (Pa. 1975) (internal

quotation marks and citation omitted).

In the case *sub judice*, the information lists the offense date as October

1, 2015. ***See*** Information, 3/22/2016, at 1. However, Appellant argues that

Ms. Smith and Ms. Baughn were never able to pinpoint a specific date for the

alleged theft, made statements indicating that it occurred in either October or

---

[6] Although Appellant argues that the standard for specificity as to date has been relaxed in cases involving the sexual abuse of minors, ***see*** Appellant's Brief at 17-18, we point out that ***Einhorn, supra*** did not involve the sexual abuse of minors.

November of 2015, and did not report it to police until January of 2016. **See** Appellant's Brief at 7-9 (noting, *inter alia*, that a police report made by Ms. Smith lists the date of occurrence as "Oct-Nov 2015[,]" and that Ms. Smith testified at the preliminary hearing that she does not know the exact date, but the money went missing in October).[7] The Commonwealth concedes that it does not know the exact date and time of the alleged theft. **See** Commonwealth's Brief at 6 (noting that it cannot fix the date of Appellant's alleged offense with precision); **see also** N.T. Trial, 12/20/2016, at 12 (stating that the Commonwealth is "not going to dispute the exact date. We don't know the exact date. It's not -- the witnesses aren't able to tell me and it's not in any of the paperwork.").

Nevertheless, the trial court determined that Appellant had sufficient notice of when the alleged offense occurred. It noted that Appellant only acted as a caregiver for Ms. Baughn for a limited period between late October and mid-November of 2015. **See** TCO at 7.[8] Moreover, it explained that "the

---

[7] We note that Appellant does not argue that she was misled at trial, faced an element of surprise prejudicial to her efforts to prepare her defense, and/or was precluded from anticipating the prosecution's proof. **See Devlin**, 333 A.2d at 891 n.1. Instead, she argues that her right to defend herself was impaired because the information and the discovery materials did not place her on sufficient notice of the date and time of the alleged theft. **See** Appellant's Brief at 12.

[8] **Cf. Devlin**, 333 A.2d at 889, 890 (concluding that the Commonwealth did not fix the date of the offense with sufficient particularity and the charge was impossible to defend where the Commonwealth asserted that the offense occurred sometime within a fourteen-month period).

record shows that [Appellant] was made aware of the time period where the envelopes with the money went missing as she communicated with Ms. Smith about them via text messages." *Id.*; *see also* N.T. at 50-52 (discussing the text message exchange between Ms. Smith and Appellant regarding the missing envelopes).[9]  Consequently, the trial court suggested that Appellant could have proffered evidence establishing when Ms. Baughn may or may not have been present in Ms. Smith's home during this limited timeframe.  TCO at 7; *see also id.* at 8 ("[Appellant] offered no proof to contradict the testimony of Ms. Baughn regarding her whereabouts or to show that Ms. Baughn was elsewhere at any point during the relevant time frame.").  Likewise, Appellant could have presented evidence as to when, and how, she had assisted Ms. Baughn in order to undermine the witnesses' account of what transpired and establish an alibi.[10]  In any event, the trial court discerned that "[t]he use of a short-range of dates did not hamper [Appellant's] ability to cross-examine the Commonwealth's witnesses about the events, test their

_____

[9] Our review of the record does not indicate that Appellant has disputed that this text message exchange took place.

[10] We further distinguish Appellant's circumstances from cases where we have observed that when "the state has alleged and relies on a fixed date and [the] defendant also relies on that date in preparing his defense, it is error to permit a jury to find that the crime was committed on another date, time being of the essence where the defense is alibi."  *See, e.g.*, *Commonwealth v. Boyer*, 264 A.2d 173, 176 (Pa. Super. 1970).  In the case at bar, Appellant did not prepare an alibi defense for October 1, 2015, which was the date of the offense set forth in the information, seemingly because she had notice before trial that the alleged offense occurred sometime in October or November of 2015.  *See* Appellant's Brief at 7-9.

recollection of events or attack their credibility, especially with respect to the timing of events relevant to this case." *Id.* (citation omitted). We agree.

Finally, we are mindful that Ms. Smith's interaction with Appellant when locating the envelopes between the towels became more significant to Ms. Smith as time went on, which explains why Ms. Smith cannot recall the specific date of that interaction. After Appellant had told Ms. Smith that Ms. Smith had not placed the envelopes back between the towels on the day in question, Ms. Smith said she "just blew it off [and] said [o]kay, I'll look again" and "kept tearing the place up looking for these envelopes." *See* N.T. at 49. However, that exchange in the bathroom became more noteworthy to Ms. Smith later on, after Appellant subsequently texted Ms. Smith about the envelopes' being in the hallway, and Ms. Baughn confessed that she saw Appellant take the money and "stuff[] it down her pants." *See* N.T. at 50-51, 59. Ms. Smith explained that she did not go to the police immediately because she wanted to make sure that her money was really gone. *Id.* at 60.[11] Consequently, we agree with the Commonwealth that the date of the offense was alleged with reasonable specificity under the circumstances of this case. *See* Commonwealth's Brief at 4; *see also Einhorn*, 911 A.2d at 978 (determining that "flexibility was warranted in fixing the date of the offense considering the

---

[11] Ms. Smith testified, "I said let me make sure, and I continued to look and I wanted to make sure that [Ms. Baughn] was telling me exactly what she saw and -- because I didn't want to make any false accusations." N.T. at 60.

circumstances surrounding [the victim's] death"). Accordingly, we conclude that Appellant had sufficient notice of when the alleged offense took place.

Judgment of sentence affirmed.

Judge Stabile joins this memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/18