UNITED STATES of America

v.

Lexie Little CARTER.

Cr. No. 83–167.

United States District Court,
W.D. Pennsylvania.

June 21, 1984.

Sandra D. Jordan, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Thomas S. White, Asst. Federal Public Defender, Pittsburgh, Pa., for defendant.

## MEMORANDUM

MARSH, District Judge.

The defendant, Lexie Little Carter, was indicted on October 25, 1983 for five counts of bank robbery in violation of 18 U.S.C. § 2113(a). The banks involved were Pittsburgh National Bank, Homestead Branch, Pennsylvania; Equibank, Duquesne Branch, Pennsylvania; Mellon Bank, Swissvale Branch, Pennsylvania; Equibank, Pittsburgh Branch, Pennsylvania; and Pittsburgh National Bank, Pittsburgh Branch, Pennsylvania. The deposits in all of these banks were insured by the Federal Deposit Insurance Corporation at the time of the robberies.

The trial began on April 23, 1984 and upon overwhelming evidence, the defendant was found guilty of all counts.

Subsequent to his conviction, the defendant filed a motion for new trial and/or arrest of judgment. A hearing on these motions was held on May 22, 1984.

■ Rule 34, Fed.R.Crim.P., provides for arrest of judgment if the indictment does not charge an offense or if the court is without jurisdiction of the offense charged. No grounds for arrest of judgment were alleged in defendant's motion. Therefore, the motion for arrest of judgment will be denied.

■ With respect to the motion for new trial, defendant has alleged that certain government exhibits were improperly admitted into evidence at trial.

Government Exhibit 8A was introduced into evidence at trial to show that the defendant signed his name to this document acknowledging he committed the two bank robberies that were listed thereon. Exhibit 8A was a xerox copy of the original of Government Exhibit 8. Government Exhibit 8 contained a list of seven state liquor store robberies and two of the five bank robberies charged in the indictment. To avoid prejudice to the defendant at trial by presenting evidence of prior crimes, Government Exhibit 8 was excised to show only the two federal bank robberies. Therefore, the original of Government Exhibit 8 did not go out to the jury during deliberations. But the original was used to make the excised copy which was admitted as Government Exhibit 8A.

The defendant asserts in his brief in support of the motion for new trial that it is newly discovered evidence that his signature did not appear on Government Exhibit 8, but that the signature was forged to show his name on the last three lines of that exhibit. He then goes on to assert that the testimony of Detective Leonard was perjured since Detective Leonard testified he saw Carter sign his name to the original of Government Exhibit 8, a yellow sheet of paper.

We fail to understand how defendant can assert evidence to be newly discovered when the original of Government Exhibit 8 was available both before and during his trial. In fact, during the course of the trial, the defendant forwarded a letter to the United States Attorney concerning Exhibit 8.[1] Said letter is dated April 23, 1984 and is stamped "received" by the U.S. Attorney's office on April 24, 1984. In referring to Government Exhibit 8, defendant states:

"... This isn't the list that I signed, this list was made on a xerox copier, *the last three signatures are indeed mine,* but they were put there by a copier and a clever individual. If you don't believe me, find the original, then compare.

1. Defendant's Exhibit 104 to the hearing on motion for new trial held on May 22, 1984.

Then again, of this document, you won't find an original." (Defendant's Exhibit No. 104) (Emphasis supplied.)

The original of Government Exhibit 8 was produced at trial as a result of defendant's letter. Excerpts from the trial transcript requested by the United States to be prepared for use at the hearing on motion for new trial indicate that the defendant had an opportunity to review the original of Government Exhibit 8 (a yellow sheet) and Government Exhibit 8A (an excised copy of Exhibit 8).

Defendant was questioned by his counsel on the admissibility of Government Exhibit 8A as follows:

"MR. WHITE: All right, let me clear this up with my client.

Mr. Carter, you understand—and we discussed this when this exhibit was admitted—that we agreed to the admission of Government Exhibit 8A; is that correct?

THE DEFENDANT: Yes.

MR. WHITE: That involved the liquor store robberies; is that correct?

THE DEFENDANT: Yes.

MR. WHITE: Do you have objection, at this time, to Exhibit 8A going out to the jury?

THE DEFENDANT: No.

MR. WHITE: Because the alternative would be to put the yellow sheet in, which would be the 18 liquor store robberies, do you understand that?

THE DEFENDANT: Yes."

We note that no challenge to the authenticity of defendant's signature was made at this time, at a late stage in the trial, just prior to the court's charge to the jury. Now, however, defendant wants this court to believe he would have objected to Government Exhibit 8A since it did not bear his authentic signature. We find this contention to be frivolous and without merit.

In examining defendant's alleged newly discovered evidence in light of the tests set up in *United States v. Herman,* 614 F.2d 369, 371 (3rd Cir.1980), we find that defend-

ant has not met the first part of *Herman's* five-part test; that is, the evidence is not newly discovered.

To support this conclusion, the court reporter, at the court's request, prepared excerpts from the defendant's testimony on cross-examination at trial (attached hereto as Exhibit A). When questioned concerning signing Exhibit 8A next to the description of two of the bank robberies, the defendant admitted he signed his name.

Furthermore, we note that Government Exhibit 8 was discussed in pretrial proceedings involving defendant's motion to suppress held on January 4 and 5, 1984. At said hearing, Detective Norman Leonard testified, similarly to his trial testimony, as to how the signatures came to appear on Government Exhibit 8. Detective Leonard made a list of liquor store robberies and two federal bank robberies by date of each offense and then reviewed each offense report with the defendant. After reviewing the reports of each offense, the defendant was asked to acknowledge he committed the offense by signing his signature on the line of the list describing that particular offense.

After reading the report of an offense, Detective Leonard would say to defendant. "If you did this robbery and you were responsible for this robbery, acknowledge by signing your name at the end of the line" (Transcript of Suppression Hearing, pp. 32–33). Utilizing this procedure, defendant was questioned on seven state liquor store robberies and two bank robberies. His signature appears on the original (yellow sheet) of Government Exhibit 8 after each line describing said offense. Government Exhibit 8 was witnessed by Detective Norman Leonard of the City of Pittsburgh Police, Detective James Heyl of the Allegheny County Police and Special Agents Ralph Young and James Pitman of the Federal Bureau of Investigation.

The following testimony was elicited from Detective Leonard at the suppression hearing:

"Q. Did he admit he had robbed these banks?

A. Yes sir, he did.

Q. And you explained it to him fully?

A. Yes, Id did." (Transcript of Suppression Hearing, p. 32)

The defendant was questioned concerning Exhibit 8 at the suppression hearing as follows:

"Q. I show you what has been marked as Government Exhibit 8. Do you recognize that?

A. Yes.

Q. Now that indicates various addresses of state stores with some dates and numbers connected with it, does it not?

A. Yes, sir.

Q. And you signed your name besides each one?

A. Yes, I did." (Transcript of Suppression Hearing, p. 109)

In his brief defendant contends that Detective Leonard committed perjury in describing how Carter's signature came to appear on Government Exhibits 8 and 8A, and that this court should apply the test in *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928). Under *Larrison, supra,* pp. 87–88, the court must be reasonably well-satisfied that the testimony given by a material witness is false and also satisfied that the party seeking the new trial was surprised when the false testimony was given, was unable to meet it, or did not know of its falsity until after the trial.

Under the facts and circumstances of this case, we are not satisfied that Detective Leonard testified falsely, nor can we say defendant was taken by surprise with testimony he had previously heard in a suppression hearing months before the trial. The defendant's attempt to deny his signature when he previously admitted it at a suppression hearing and at the trial is not convincing.

■ In addition, we find no merit to defendant's position asserted in his brief that the original of Government Exhibit 8 (yellow sheet) should have been submitted to the jury. The defendant cannot have things go both ways. Government Exhibit 8 was excised to avoid prejudice on motion of defendant. On a new trial, defendant now wants the unexcised version to go to the jury. We find no merit to this contention or to the defendant's motion taken as a whole.

The defendant has also raised a question concerning Government Exhibit 17A which he asserts was utilized to aid in his conviction. Since this exhibit was never admitted into evidence at the trial, we shall not discuss this matter here except to note that defendant's contention with respect to this exhibit has no merit.

An appropriate order will be entered denying the motion for new trial.

## EXHIBIT A

CROSS OF Lexie Carter (trial)

BY MS. JORDAN:

Q I show you Exhibit 13. Again, your initials appear on Exhibit 13 in two places?

A Yes.

Q Did you initial those?

A Yes; I did.

Q After Ralph Young showed them to you.

A Yes.

Q And you indicated that was you in the surveillance photograph?

A No; I didn't.

Q You did not?

A Oh, no.

Q You just indicated you had seen the picture?

A He had shown me this material, that is all.

Q And he asked you what?

A Nothing.

Q Oh, he just showed it to you, and just decided to put your initials on?

A No. He asked me to initial these. He said, "Will you initial these for me?

Q And you said, "Why"?

A I didn't say anything. I just initialed it.

Q Whatever he asked you to do, you just did it, just to get out of there. Let's look at Exhibit 8A, testified to by Detective Leonard. You didn't initial that; you signed your name—

A Yes.

Q —right next to the date and name of the bank?

A Yes.

Q Do you remember Detective Norman Leonard asked you if you committed the bank robbery?

A No.

Q He didn't ask you that?

A No; he didn't.

Q You just signed your name?

A Yes. He asked me if I would sign my name, indicating he had gone over this.

Q Pittsburgh National Bank, 9/14/83, you signed your name next to that, too, didn't you?

A Yes.

Q And did Detective Leonard ask you if you committed that bank robbery?

A No; he didn't.

Q Isn't it true, Mr. Carter, you were under arrest for committing a bank robbery?

A That is what they said they had a warrant for.

Q And isn't it true you were being interrogated with respect to your commission of the bank robbery? That was the purpose of them asking you questions; wasn't it?

A When I was down there, they had that table filled with surveillance pictures, saying, "Where is that fancy shirt there? We sure couldn't find that in your house." And I denied all along having anything to do with it.

Q But the question was who committed the bank robberies; wasn't it?

A Yes.

Q And the purpose of the interrogation was to find out whether you committed the robberies?

A Yes.

MR. WHITE: Objection, Your Honor. She is asking him what their purpose was.

MS. JORDAN: If they told him.

MR. WHITE: What is in their mind?

MS. JORDAN: If they told him and if he knew when he was there.

MR. WHITE: I just object to the phrasing of the question. If she wants to ask him what they told him—

THE COURT: Let her phrase the questions in her own way.

BY MS. JORDAN:

Q Did they tell you that they were investigating the bank robberies?

A Yes; they did.

Q And that is why they were showing you these pictures; is that right?

A No. They said, "This is you in that picture." That is what they said, 'This is you, that one over there; where is that shirt at; we couldn't find that anywhere at—in your house; where do you keep it; where is the baseball cap at?'

Q And so, in this questioning of you—

A There was no questioning, ma'am.

Q They weren't questioning you?

A They were telling me.