UNITED STATES of America

v.

Lexie Little CARTER, Appellant.

No. 84–3420.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 7, 1985.

Decided March 8, 1985.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, John J. Mead, Asst. U.S. Attys., Pittsburgh, Pa., for the U.S.

George E. Schumacher, Federal Public Defender, Thomas S. White, Asst. Public Defender, Pittsburgh, Pa., for appellant.

Before GARTH, BECKER and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Defendant was tried to a jury and convicted and sentenced on a five count indictment alleging commission of a series of bank robberies in violation of 18 U.S.C. § 2113(a). Before trial, the Government made a motion to require the defendant to disclose the names and addresses of his alibi witnesses pursuant to Rule 12.1 of the Federal Rules of Criminal Procedure. The trial court granted the motion and the defendant complied with the request. The Government, however, failed to reciprocate by producing the names of persons who would be used to place defendant at the banks, and the names of persons who would be called to rebut the alibi. This failure to respond was a violation of Rule 12.1 and is the principal issue, of many, raised by the defendant on appeal. We affirm.

During 1983, there were a number of bank robberies that followed the same general pattern—a black man without a mask would walk up to a teller's window, hand the teller a slip of paper with something to the effect of, "This is a stick-up. Give me your money." written on it, and then for coercive effect typically point out the location of his gun. On September 21, 1983, the defendant, Lexie Little Carter, was arrested in connection with these robberies. The defendant was taken to the Public

Safety Building in Pittsburgh where he allegedly confessed to 18 liquor store robberies as well as the five bank robberies in question.

As part of the confession, the law enforcement agencies obtained defendant's signature or initials on surveillance pictures from the banks, dissemination memoranda prepared on each bank by the FBI, a list of liquor store robberies, and a list of three of the bank robberies involved in this case. The Government claimed that the signature or initials represented defendant's acknowledgment that he had been involved in the robberies. A lineup was conducted on October 7, 1983, at which the tellers attempted to identify the robber. Two tellers identified the defendant as the perpetrator. A third teller was shown a photographic spread and picked defendant's picture. The jury ultimately found defendant guilty on all counts and the court sentenced him to a total term of imprisonment of 40 years for the bank robberies. This appeal followed.

On appeal, the defendant raises ten separate issues. Only four of these require any discussion here. First and foremost, the defendant argues that, because the Government violated Fed.R.Crim.P. 12.1 by not giving notice of its "alibi rebuttal" witnesses, the district court erred in refusing to suppress the testimony of all Government witnesses who placed the defendant at the scene of the robberies. The Government's counter-argument, however, is compelling.

■ Rule 12.1(d), by providing that the trial court "*may* exclude the testimony" (emphasis added) if there is a failure to comply with the rule, clearly leaves the question of whether to exclude the evidence to the trial court's discretion. This is not to say that the Government should not have complied with the requirements of Rule 12.1, but exclusion of Government testimony is neither mandatory nor absolute under the rule in every instance. In the instant case, it would not appear that the trial court abused its discretion in admitting the testimony of the Government's witnesses. The primary purpose of Rule

12.1 is clearly to prevent surprise at trial. *See United States v. Myers,* 550 F.2d 1036, 1042 (5th Cir.1977). The Government's failure here to provide the relevant names cannot in any way be seen as giving rise to surprise. The witnesses presented at trial were either eyewitnesses to the crime (namely, the tellers at the various banks) or law enforcement agents who interviewed the defendant after his arrest and thus were involved with the confession. The defendant knew the identity of all these individuals because there had been a suppression hearing at which the defendant unsuccessfully sought to suppress their testimony.[1]

Furthermore, the defendant apparently placed the name of each and every prosecution witness on his voir dire questions. Thus, the defendant knew of the witnesses' existence and their names, and expressly acknowledged by his previously prepared voir dire questions his expectation that the Government intended to call the witnesses at trial.[2] Given these circumstances, it is impossible to understand how the defendant can now argue that he was completely "surprised" and that his "trial strategy [was] shattered", *see* appellant's brief at 30, by the use of the witnesses at trial. The defendant's contention that when he did not receive the Government's rule 12.1 list "[h]e concluded that the government had abandoned the use of these witnesses and would rely [solely] on the surveillance photographs," *see* appellant's brief at 27, is an *incredible* proposition—especially after the Government had *prevailed* at the suppression hearing.

■ These points suggest that the district court did not abuse its discretion in refusing to exclude the testimony of the undisclosed witnesses. This position is further supported by an analysis of the factors found by the Fifth Circuit in *United States v. Myers,* 550 F.2d at 1043, to be significant in this type of case. In *Myers,* the court held that in determining how to exercise its discretion to exclude the testimony, a court must consider:

(1) the amount of prejudice that resulted from the failure to disclose;

(2) the reason for nondisclosure;

(3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events;

(4) the weight of the properly admitted evidence supporting the defendant's guilt; and

(5) other relevant factors arising out of the circumstances of the case.

*See id.* The analysis presented earlier suggests that little, if any, prejudice resulted from the failure to disclose. Thus, the first factor noted above points to a proper refusal to exclude the testimony.

An analysis of the other factors points to this same conclusion. For example, the Government's feeling that disclosure was unnecessary is understandable (though still a violation of Rule 12.1) inasmuch as the defendant had knowledge of the witnesses as a result of the suppression hearing. Whatever little harm was in fact caused by the nondisclosure was further mitigated when the Government, during opening argument, explicitly stated which witnesses would be called. This potentially gave defense counsel time to act or prepare before the witnesses took the stand. Finally, the weight of the properly admitted evidence overwhelmingly supported defendant's

---

**1.** It is true that Cilane Spoonhoward, a teller who had been robbed and one of the witnesses at trial, did not testify at the suppression hearing. However, she was named in the indictment, the defendant did include her name in a question that was part of his voir dire request, and the Government in its opening statement explicitly stated that she would be called as a witness. The defendant, therefore, should not have been surprised at her appearance during the trial.

**2.** Also, if the defendant did not believe they would be called at trial, there would have been no need for the suppression hearing. Even if the defendant did not know of the Government's intentions, the defendant most certainly should have expected that the Government would call the witnesses it did, since, as noted above, the witnesses called were either eyewitnesses to the crime or law enforcement agents who had some connection with the confession.

guilt. Thus, overall, it cannot be said that the trial court abused its discretion in failing to exclude the testimony. *Cf. United States v. Portillo*, 633 F.2d 1313 (9th Cir. 1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *McClendon v. United States*, 587 F.2d 384 (8th Cir.), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1978).

The defendant's second argument is that the arrest warrant was invalid because it incorrectly stated the date of one of the robberies. The criminal complaint/arrest warrant in question was issued by a state magistrate for the Pittsburgh National Bank robbery. The date of the robbery was incorrectly stated as September 14, 1983, instead of September 7, 1983. The district court denied a resulting motion to suppress and the defendant challenges the ruling.

■ A mere technical error does not automatically invalidate the warrant. "The true inquiry ... is ... whether there has been such a variance as to 'affect the substantial rights' of the accused." *Cromer v. United States*, 142 F.2d 697 (D.C.Cir.1944) (quoting *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). A mere inaccuracy in setting forth the date of an offense in a criminal complaint would not appear to be a material or critical variance. *Cf. United States v. Tramunti*, 513 F.2d 1087, 1115 (2d Cir.1975) ("error [as to nature of charge was] apparently a clerical one, [and] in no way voids his arrest"). The incorrect date here did not negate any elements of the charged offense. Thus, it did not affect the validity of the charge. Furthermore, the defendant never proved that the misstatement was made intentionally or with reckless disregard for the truth. Such a showing would appear to be required. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

■ The defendant's third contention is that the trial court erred in admitting the eyewitness identification testimony despite its alleged unreliability. Numerous reasons are presented for excluding the testimony of the eyewitnesses on the basis of unreliability. The reasons, however, are uniformly unpersuasive. For example, the defendant gives three reasons why the testimony of teller Anne Issa should have been excluded. First, he notes that a security officer had suggested to Ms. Issa that there would be a suspect in the lineup she was about to view. While such a statement is dangerously suggestive when combined with a one person show-up, *see Styers v. Smith*, 659 F.2d 293 (2d Cir.1981), this is not true in the case of a fair lineup, *see United States v. Danzey*, 594 F.2d 905 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).

■ Second, Ms. Issa testified that "the other guys didn't look anything like [the robber]." The photographs of the lineup show that all five participants were black and all were of the same general height and build. Overall, there would not appear to be any problem with suggestiveness. *See United States v. Lewis*, 472 F.2d 252, 254 (3d Cir.1973); *see also United States v. Lewis*, 547 F.2d 1030, 1035 (8th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). Thus, Ms. Issa's comment would appear to be more of a reflection of the positiveness of her identification than it is a reflection on the fairness of the lineup.

■ Finally, defendant complains that Ms. Issa said that she had picked the person who "looked the most like the robber." This hesitation was due to the fact that defendant had shaved off his mustache. Furthermore, any lack of certainty in her identification went to the weight of her testimony, not its admissibility. *See United States v. Flenory*, 619 F.2d 301 (3d Cir. 1980). The arguments as to the other witnesses are equally unpersuasive.

The final issue raised that deserves any discussion here is whether the trial court erred in not charging the jury that they were to determine an issue not by the number of witnesses, but by the quality of the evidence. It is not denied that the defendant properly requested such an instruction. Furthermore, the requested instruction is often given and the Govern-

ment concedes that it is a correct statement of the law.

The district court initially affirmed the requested instruction, but said it would not be read. Apparently, the court believed that the substance of the requested instruction would be covered by the charge. The relevant portion of the instructions given is as follows:

> You are to consider the evidence in light of the instructions I am now giving you. As you consider the evidence, it is important to bear in mind that our law presumes a defendant to be not guilty of the offenses of which he stands charged. The presumption of innocence remains with him throughout the trial, through all of its stages, and is to cause you, the jury, to find him not guilty unless it is removed by evidence presented to you by the prosecution which establishes the Defendant's guilt of one or more charges contained in the indictment beyond a reasonable doubt. *The presumption of innocence alone must result in the acquittal of the Defendant,* unless you are convinced, from all the evidence in the case, of the Defendant's guilt beyond a reasonable doubt.

(Emphasis added.) After hearing this charge it is very doubtful that the jury could have believed that the key to the case was the number of witnesses presented.

 It is clear that the language of the charge is left to the discretion of the court. *See United States v. Garrett,* 574 F.2d 778, 783 (3d Cir.), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978). The defendant has cited no cases holding that the refusal to give the instruction in question is per se reversible error. In fact, in *United States v. Adcock,* 558 F.2d 397, 403 (8th Cir.1977), the court held that a failure to give the instruction was *not* reversible error so long as there were complete instructions on the presumption of innocence and the Government's burden of proof. The charge presented above satisfies this requirement. Thus, the district court cannot be said to have abused its discretion in this matter.

The following arguments were also made: (a) that the trial court erred in failing to suppress the physical evidence and defendant's statement because no probable cause was set forth in the arrest warrant; (b) that the trial court erred in not suppressing the alleged confession or admission; (c) that the trial court erred in not granting the defendant's motion for a new trial based on after-discovered evidence; (d) that the trial court erred in not authorizing the defendant to employ a handwriting expert to examine the writings to determine if it was his signature, and thereby denied the defendant due process; (e) that the trial court erred in not declaring that the applicable jury selection process, being founded on only voting lists, discriminated against the selection of black persons on the panel of jurors; and (f) that the trial court erred in refusing to suppress the evidence of the suggestiveness of the lineup and the admission of the lineup into evidence. *See* e.g., *United States v. Carter,* 587 F.Supp. 419 (W.D.Pa.1984); *United States v. Carter,* 585 F.Supp. 167 (W.D. Pa.1984). We find no merit in any of these contentions and reject them.

Accordingly, the judgment of conviction will be affirmed.