**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3431
_____

UNITED STATES OF AMERICA

v.

MALIK MARTIN,
a/k/a Leek,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2:16-cr-00218-12)
Honorable R. Barclay Surrick, United States District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
February 7, 2022

BEFORE:  GREENAWAY, JR., SCIRICA, and COWEN, *Circuit Judges*

(Filed: March 4, 2022)
_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

Defendant Malik Martin appeals from the judgment of conviction entered by the

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

United States District Court for the Eastern District of Pennsylvania. We will affirm.

## I. Background

Martin was involved in a large-scale drug trafficking organization that transported bulk amounts of marijuana from the west coast to the east coast. In connection with that operation, Martin was charged with: (1) conspiracy to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count 1); (2) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) (Count 9); and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (h) (Count 10).

The organization operated from 2005 to 2016 with Jerome Woods as its leader. At trial, Martin conceded that he was part of the organization. He testified that he was responsible for collecting money to purchase marijuana and for finding the marijuana. He also testified to "situating" and "[p]reparing" the marijuana for travel to Philadelphia. J.A. 198.

Martin asserted that he affirmatively withdrew from the conspiracy in early 2012 by informing Woods that he "wanted to be done with it basically." J.A. 209-10. Given that the applicable statute of limitations was August 9, 2012, withdrawal by that time would insulate Martin from prosecution. *See* 18 U.S.C. § 3282. However, aside from his own testimony, Martin offered no other evidence to support his defense of withdrawal.

To the contrary, the government produced substantial evidence of Martin's continued involvement in the conspiracy in 2013 and 2014. For instance, a government witness testified that he drove Martin and Woods from Philadelphia to Houston to

2

purchase marijuana in 2013. Martin denounced this testimony as a lie, and testified instead that he flew to Houston to see his girlfriend. Although Martin claimed that he and Woods had not arranged their trips together, the government presented evidence that Martin and Woods rented a vehicle together in Houston and departed Houston for Philadelphia within one day of each other.

The government also produced evidence that Martin was involved in the conspiracy's receipt of marijuana on July 17, 2014. Special Agent Desiree Maxwell, a law enforcement officer who was surveilling a parking lot at the Philadelphia Days Inn on that date, testified that she observed Martin meeting with Woods and other co-conspirators there. At trial, she identified Martin in several photographs taken at the scene. She testified that she watched members of the organization unload boxes from a tractor-trailer into a Honda minivan, which was parked near a Mitsubishi registered to Martin. Then, she observed both the minivan and Mitsubishi drive away. Ultimately, law enforcement located the minivan, which was unoccupied but did contain the boxes. They concluded that the conspirators had abandoned the car in order to evade arrest in connection with the marijuana.

Martin acknowledged that he was present at the scene, but explained that he was casually meeting with an allegedly former co-conspirator, Joseph Akers, there. Martin testified that he remained friends with Akers even after his alleged withdrawal from the conspiracy, and that Akers had called him that day to let him know he would be "in the area" near Martin. J.A. 215. Martin insisted that, while one could "assume what[] [was] going on" "from being around marijuana before," he did not "know[]" what was

3

occurring at the scene.  J.A. 215.

Martin also testified that he left the scene in his own car, separate from the co-conspirators.  He explained that it was not until after he left that his co-conspirators called him to let him know that they had left the van out of concern that they were being surveilled.  Officer Maxwell confirmed that there were no photos of Martin leaving in the minivan.  The crux of this appeal involves Martin's assertion that a question posed by the government, followed by a timely objection, sustained by the Court and not answered by the witness, is a sufficient basis to disturb the jury's verdict.  The government asked Officer Maxwell, "And how did you learn that Malik Martin did, in fact, drive away in that silver minivan?"  J.A. 193.  Before she answered, defense counsel objected, which the Court sustained.  Defense counsel did not move for the jury to disregard the question, for a cautionary instruction, or for a mistrial.  The government switched topics immediately.

After the evidence was presented, the Court gave its instructions to the jury, including instructions on the defense of withdrawal from a conspiracy that were consistent with the Third Circuit Criminal Model Jury Instructions ("Third Circuit model instructions").  Martin was ultimately convicted of the drug conspiracy (Count 1) and one count of the money laundering conspiracy (Count 9).  He was sentenced to 144 months' imprisonment, five years' supervised release, and a special assessment of $200.  Martin timely appealed.

## II.    Discussion

On appeal, Martin argued that the District Court plainly erred when it did not, *sua*

4

*sponte*, issue a limiting instruction in connection with the government's question to Officer Maxwell or when it presented Third Circuit model instructions regarding the defense to conspiracy.[1]  We reject these claims and agree with the District Court's judgment against Martin.

### a. Limiting Instruction

Martin argues that he was denied a fair trial because the government improperly vouched for Officer Maxwell when it asked her how she learned that Martin drove away in the minivan in July 2014.  In his view, this question suggested that the government possessed extra-record evidence.  This argument fails.  Vouching requires: (1) that the prosecutor "assure the jury that the testimony of a [g]overnment witness is credible"; and that (2) "this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record."  *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998).  That the defendant claims that the "prosecutor assured the jury that a witness'[s] testimony was credible" is insufficient.  *Id.*  Martin has not satisfied the criteria for vouching.  The Court sustained the objection before Officer Maxwell could

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Where there is no contemporaneous objection at trial, a claim is reviewed for plain error. *United States v. Shannon*, 766 F.3d 346, 355 n.12 (3d Cir. 2014).  To establish plain error, the defendant must prove: (1) the Court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected the defendant's substantial rights, meaning the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997).  The plain error exception should be "'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

respond. Accordingly, the government could not assure the jury of the credibility of her response—there was none—much less make this assurance based on extra-record evidence.

Further, Martin asserts that the District Court committed plain error when it did not, *sua sponte*, issue a limiting instruction after the Court sustained defense counsel's objection to that question. However, "[t]rial counsel is not constitutionally required to request a limiting instruction any time one could be given." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (recognizing that the decision not to request a limiting instruction could be a strategic one). The absence of one here also did not affect Martin's substantial rights. *See Johnson*, 520 U.S. at 467. The ample evidence showing that Martin was present at the scene in July 2014 belies any contention that the jury would have found Martin not guilty but for this single, unanswered question. Further, defense counsel objected to the question, which the Court sustained, and the government immediately switched topics.

Then, in its jury instructions, the Court explained that when it sustained an objection to an unanswered question, the jury was required to disregard it entirely without positing what the witness may have answered. Pursuant to the general presumption that "juries follow instructions" and with no evidence to the contrary, we will assume that the jury disregarded the question. *United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003).

### b. Jury Instructions Regarding Defense to Conspiracy

Martin further argues that the District Court erred in presenting the Third Circuit model instructions regarding the defense to conspiracy charges instead of instructing the

6

jury that his specific behavior could constitute withdrawal. To make out the defense of withdrawal from a conspiracy, "'[t]he defendant must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals.'" *United States v. Kushner*, 305 F.3d 194, 198 (3d Cir. 2002) (quoting *United States v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982)). Accordingly, a proper instruction on withdrawal must advise the jury that the defendant has abandoned the conspiracy by an affirmative act. *United States v. Boone*, 279 F.3d 163, 192-93 (3d Cir. 2002) (upholding jury instruction that withdrawal may be accomplished only by "an affirmative act of termination . . . withdrawal or disassociation").

Consistent with this requirement, the Third Circuit model instructions provide: "to withdraw from a conspiracy [a defendant] must have taken some clear, definite and affirmative action to terminate [his] participation, to abandon the illegal objective, and to dissociate [himself] from the agreement." Third Circuit Crim. Model Jury Instruction (2018) 6.18.371J-1.

Here, the District Court used the Third Circuit model instructions, instructing that an "affirmative action to terminate his participation" was sufficient for withdrawal, without specifying that communicating one's withdrawal to the leader of the conspiracy is a qualifying affirmative act. J.A. 451. It was not an error for the District Court to use these instructions verbatim. *See United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) ("[w]e have a hard time concluding that the use of our own model jury instruction can constitute error"). Nor was the Court required to tailor the instructions to the specific

7

contours of Martin's actions by specifying that Martin's conduct established the defense—especially where Martin's alleged communication to Woods was a highly disputed fact at trial and the only evidence supporting it was Martin's own testimony. *See United States v. Carter*, 756 F.2d 310, 313-14 (3d Cir. 1885) (holding that failure to give a requested instruction was not reversible error because jury instructions are "left to the discretion of the court").

III.

For the foregoing reasons, we will affirm the judgment of conviction of the District Court.